# ORIGINAL

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court of California
County of Los Angeles

AUG 3 0 2021

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ Deputy
Kristina Vargas

**NOTICE TO DEFENDANT:** CITY OF BEVERLY HILLS, CAPTAIN SCOTT
*(AVISO AL DEMANDADO):* DOWLING, SERGEANT D. D., OFFICER J.I.,
OFFICER J.D., and DOES 1 -100, inclusive, all sued in their individual and
official capacities

**YOU ARE BEING SUED BY PLAINTIFF:** JASMINE WILLIAMS & KHALIL
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* WHITE, in Their Individual
and Representative Capacities on Behalf of a Class of All Persons similarly situated

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Los Angeles 111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
**21STCV31949**

**BY FAX**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
GOLDBERG & GAGE - 23002 Victory Blvd., Woodland Hills, CA 91367; (818) 340-9252
BEN CRUMP LAW FIRM - 1215 K St., Ste. 1700, Sacramento, CA 95814; (866) 600-3742

| | | |
|---|---|---|
| DATE: *(Fecha)* AUG 3 0 2021 | Clerk, by _____ *(Secretaria)* Kristina Vargas | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010)).*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder

**EXHIBIT A**

7

ORIGINAL

**FILED**
Superior Court of California
County of Los Angeles

AUG 30 2021

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ Deputy
        Kristina Vargas

1 | Bradley C. Gage, Esq., S.B. No. 117808
(bgage@goldbergandgage.com)
2 | Terry M. Goldberg, Esq., S.B. No. 55674
(tgoldberg@goldbergandgage.com)
3 | Milad Sadr, Esq., S.B. No. 245080
(msadr@goldbergandgage.com)
4 | **LAW OFFICES OF GOLDBERG & GAGE**
A Partnership of Professional Corporations
5 | 23002 Victory Boulevard
Woodland Hills, California 91367
6 | Tel: (818) 340-9252  Fax: (818) 340-9088

7 |

8 | Benjamin Crump, Esq.. Florida State Bar No. 0072583 (*pro hac vice* pending)
(ben@bencrump.com)
Mark T. Harris, Esq., S.B. No. 111213
9 | (mark@bencrump.com)
**BEN CRUMP LAW FIRM**
10 | 1215 K Street, Suite 1700
Sacramento, CA 95814
11 | Tel: (866) 600-3742

12 |

13 | Attorneys for Plaintiffs,
JASMINE WILLIAMS, KHALIL WHITE, and the PUTATIVE CLASS

14 |

15 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16 | **FOR THE COUNTY OF LOS ANGELES**

17 |

| | |
|---|---|
| 18  JASMINE WILLIAMS & KHALIL WHITE, in Their Individual and Representative Capacities on Behalf of a Class of All Persons similarly situated, | CASE NO. **21STCV31949** |
| 19 | **COMPLAINT FOR MONETARY DAMAGES; DEMAND FOR JURY TRIAL** |
| 20 | |
| 21     Plaintiffs, | 1.    VIOLATION OF BANE ACT |
| | 2.    VIOLATION OF RALPH ACT |
| 22     vs. | 3.    VIOLATION OF PLAINTIFFS' PROCEDURAL AND SUBSTANTIVE |
| 23  CITY OF BEVERLY HILLS, CAPTAIN SCOTT DOWLING, SERGEANT D. D., | DUE PROCESS RIGHTS THROUGH MALICIOUS PROSECUTION/FALSE |
| OFFICER J.I., OFFICER J.D., and DOES 1 - | IMPRISONMENT |
| 24  100, inclusive, all sued in their individual and official capacities, | 4.    VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM |
| 25 | UNREASONABLE SEARCHES AND SEIZURES |
| 26     Defendants. | 5.    MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL |
| 27 | RIGHTS |

BY FAX

28 |

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                      Page -1-

**EXHIBIT A**

8

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1

2     Plaintiffs assert the following claims and hereby demand a jury trial for themselves and all

3     members of the Class.

4                    **I.      VENUE AND JURISDICTION**

5   1.    This is an individual and class action brought pursuant to California Code of Civil Procedure §382

6         and California Civil Code §51 et seq.  Plaintiffs JASMINE WILLIAMS and KHALIL WHITE

7         (hereinafter, collectively "WILLIAMS", "WHITE," " Plaintiff," or "Plaintiffs") bring this action

8         on their own behalf and on behalf of all persons within the class defined herein, and as private

9         attorney general on behalf of the general public.  Venue is proper in the Los Angeles Superior

10        Court because the deprivation of the rights of the class, and individual representatives took place

11        in Beverly Hills, CA and the legal theories are of the type appropriate for the Los Angeles Superior

12        Court.  The class representatives will not pursue any claims that are inconsistent with the class.

13                   **II.     CLASS ALLEGATIONS**

14  2.    The Class consists of the following: All African Americans and other individuals with a dark

15        complexion, who were considered "black," that (i) were seized without reasonable suspicion or

16        probable cause, (ii) suffered excessive force, and/or (iii) maliciously prosecuted on false charges,

17        by members of the Beverly Hills Police Department ("BHPD") and/or Captain SCOTT

18        DOWLING'S Task Force a.k.a.  "Operation Safe Street," "Rodeo Drive Task Force," or other

19        names, on or around Rodeo Drive, Beverly Hills, California, between March 1, 2020 and July 1,

20        2021.

21  3.    The members of the class will be individuals who live and reside in the County of Los Angeles,

22        State of California, as well as individuals who were arrested/detrained in Beverly Hills while

23        visiting from other locations.

24  4.    The persons who comprise the Class (sometimes hereinafter referred to as "Plaintiffs," "Plaintiff

25        Class" or "Class") are so numerous that the joinder of all such persons is impracticable and the

26        disposition of their claims as a Class will benefit the parties and the Court.

27  5.    The class action claims of Plaintiff are typical of the claims of the Class WILLIAMS and WHITE

28        seek to represent.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -2-**

**EXHIBIT A**

6. Plaintiffs will fairly and adequately protect the interests of the Class and Plaintiffs do not have any interests that are antagonistic to the Class.

7. Counsel for the Class are experienced, qualified and generally able to conduct complex class action litigation.

8. This Court should permit this action to be maintained as a class action pursuant to <u>California Code of Civil Procedure</u> §382 because:

(a) The questions of law and fact common to the Class predominate over any question affecting only individual members;

(b) A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

© The Class is so numerous that it is impractical to bring all members of the Class before the Court;

(d) Plaintiff and the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(e) There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which Defendants' actions have inflicted upon Plaintiff and the Class;

(f) There is a community of interest in ensuring that the combined assets and available insurance of the Defendants is sufficient to adequately compensate the members of the Class for the injuries sustained;

(g) Without class certification, the prosecution of separate actions by individual members of the Class would create a risk of:

(1) Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and/or

(2) Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**     **Page -3-**

1    not limited to the potential for exhausting the funds available from those parties who are,

2    or may be, responsible Defendants; and

3    (h)    Defendants have acted or refused to act on grounds generally applicable to the Class,

4    thereby making final injunctive relief appropriate with respect to the Class as a whole.

5    9.    Questions of law and fact common to all potential Class Members predominate over any questions

6    affecting only individual Class Members.  Among the common questions of law and fact to the

7    Class Members are:

8    a.    Whether by threats, intimidation or coercion, Defendants cause class members to

9    reasonably believe that if they exercised their rights under state or federal law, Defendants

10    would commit violence against them and that Defendants had the apparent ability to carry

11    out the threats.

12    b.    Whether Defendants intended to deprive class members of their enjoyment of the interests

13    protected by state and federal laws.

14    c.    Whether Defendants intentionally threatened violence against class members irrespective

15    that Defendants actually intended to carry out the threat.

16    d.    Whether a substantial motivating reason for Defendants to intentionally threaten violence

17    were class members' race/color.

18    e.    Whether class members were wrongfully arrested without probable cause, and charged

19    with multiple criminal counts based upon the false charges, statements, police reports,

20    evidence and testimony presented by Defendants.

21    f.    Whether Defendants, in violation of Penal Code section 118.1 knowingly filed materially

22    false police reports, made materially false statements to investigators and prosecutors that

23    class members had violated numerous provisions of the California Penal Code, and

24    presented falsified evidence, all for the purpose of having class members wrongfully,

25    unjustly and falsely charged with crimes, and to ensure that class members would be falsely

26    and wrongfully prosecuted and imprisoned.

27    g.    Whether despite no probable cause to arrest and charge class members for any crime or to

28    recommend that they be prosecuted, Defendants, with malice and conscious disregard for

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                      Page -4-

1    class members' rights to due process, said defendants presented false evidence and
2    recommended that Plaintiffs be charged/prosecuted.

3    h.    Whether Defendants violated class members' Fourth Amendment rights by unlawfully and
4    unreasonably detaining, handcuffing, arresting and imprisoning them without reasonable
5    suspicion or probable cause.

6    i.    Whether Defendants acted specifically with the intent to deprive class members of their
7    constitutional rights under the Fourth Amendment to be free from unreasonable seizures.

8    ### III.    PARTIES

9    10.    At all times relevant hereto, Plaintiff JASMINE WILLIAMS (hereafter also "Plaintiff" or
10    "WILLIAMS"), was visiting Los Angeles, California.

11    11.    At all times relevant hereto, Plaintiff KHALIL WHITE (hereafter also "Plaintiff" or "WHITE"),
12    was visiting Los Angeles, California.

13    12.    At all times mentioned herein, defendant CITY OF BEVERLY HILLS (hereafter also "CITY")
14    was a public entity duly organized and existing under and by virtue of the laws of the State of
15    California. BHPD is a part of the city.

16    13.    Defendant SCOTT DOWLING, and Does 1-3, and each of them were managerial level or
17    supervisory level employees of the BHPD, and hereinafter collectively referred to as "DOWLING"
18    DOWLING in particular was and is a Captain in the BHPD. As Captain, he is the third highest
19    ranking employee of the police department. Moreover, there is not a permanent chief of police.

20    14.    At all times relevant herein, DOWLING and Does 1-3, was a resident of the County of Los
21    Angeles. At all times relevant hereto, said defendants were acting within the course and scope of
22    their employment as captains chiefs, policy makers, and/or civilian employees of the BHPD.
23    Plaintiffs further allege that DOWLING and Does 1-3 acted at all times herein under the auspices,
24    direction, command, instruction, and/or control of the Beverly Hills Police Department and its'
25    Chief of Police.

26    15.    At all times relevant herein, defendant Sgt. D.D. and Does 4-6 (hereafter also "D.D."), were
27    residents of the County of Los Angeles. At all times relevant hereto, said defendants were acting
28    within the course and scope of their employment as police officers, sergeants, captains and chiefs,

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -5-**

**EXHIBIT A**                    12

1      policy makers, and/or civilian employees of the BHPD.

2   16.     At all times relevant herein, defendant D.D. and Does 4-6 was a Beverly Hills Police Department

3      sergeant and engaged in the conduct alleged herein under color of State Law, and through the

4      auspices of the City of Beverly Hills and Beverly Hills Police Department. Plaintiffs allege that the

5      conduct and actions of D.D. and Does 4-6 as alleged herein occurred during D.D. and Does 4-6's

6      normal working hours as Beverly Hills Police Department sergeants or occurred under the pretense

7      that either was acting as a Beverly Hills Police Department sergeant or was made possible solely

8      because of his position as a Beverly Hills Police Department sergeant.  Plaintiffs further allege that

9      D.D. and Does 4-6 acted at all times herein under the auspices, direction, command, instruction,

10      and/or control of the Beverly Hills Police Department and its' Chief of Police.

11   17.     At all times relevant herein, defendant Officer J.I. and Does 7-9 (hereafter also "J.I"), was a

12      resident of the County of Los Angeles, and was a police officer, sergeants, detective, and/or

13      civilian employee, agent or representative of the BHPD and employees, agents and representatives

14      of the City of Beverly Hills. At all times relevant hereto, said defendant was acting within the

15      course and scope of his employment.

16   18.     At all times relevant herein, J.I. and Does 7-9 was a Beverly Hills Police Department police

17      officer and engaged in the conduct alleged herein under color of State Law, and through the

18      auspices of the City of Beverly Hills and Beverly Hills Police Department. Plaintiffs allege that the

19      conduct and actions of Officer J.I. and Does 7-9 as alleged herein occurred during Officer J.I. and

20      Does 7-9's normal working hours as Beverly Hills Police Department police officers or occurred

21      under the pretense that either was acting as a Beverly Hills Police Department police officer or was

22      made possible solely because of his position as a Beverly Hills Police Department police officer.

23      Plaintiffs further allege that Officer J.I. and Does 7-9 acted at all times herein under the auspices,

24      direction, command, instruction, and/or control of the Beverly Hills Police Department and its'

25      Chief of Police.

26   19.     At all times relevant herein, defendant Officer J.D. and Does 10-12 (hereafter also "J.D."), was a

27      resident of the County of Los Angeles, and was a police officer, sergeants, detectives, and/or

28      civilian employees, agents and representatives of the BHPD and employees, agents and

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**             **Page -6-**

**EXHIBIT A**    13

1   representatives of the City of Beverly Hills. At all times relevant hereto, said defendant was acting

2   within the course and scope of his employment as police officers, sergeants, captains and chiefs,

3   policy makers, and/or civilian employees of the BHPD.

4   20.   At all times relevant herein, defendant  Officer J.D. and Does 10-12 was a Beverly Hills Police

5   Department police officer and engaged in the conduct alleged herein under color of State Law, and

6   through the auspices of the City of Beverly Hills and Beverly Hills Police Department. Plaintiffs

7   allege that the conduct and actions of Officer J.D. and Does 10-12 as alleged herein occurred

8   during Officer J.D. and Does 10-12's normal working hours as Beverly Hills Police Department

9   police officer or occurred under the pretense that either was acting as a Beverly Hills Police

10   Department police officer or was made possible solely because of his position as a Beverly Hills

11   Police Department police officer.  Plaintiffs further allege that Officer J.D. and Does 10-12 acted

12   at all times herein under the auspices, direction, command, instruction, and/or control of the

13   BHPD and its' Chief of Police.

14   21.   At all times relevant herein, defendant Does 13-60 were residents of the County of Los Angeles,

15   and were police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian

16   employees agents and representatives of the Beverly Hills Police Department. At all times relevant

17   hereto, said defendant was acting within the course and scope of their employment as police

18   officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents

19   and representatives of the BHPD.

20   22.   At all times relevant herein, defendant  Does 13-60 were police officers, detectives. sergeants,

21   captains and chiefs, policy makers, and/or civilian employees agents and representatives of the

22   Beverly Hills Police Department and engaged in the conduct alleged herein under color of State

23   Law, and through the auspices of the City of Beverly Hills and Beverly Hills Police Department.

24   Plaintiffs allege that the conduct and actions of Does 13-60 as alleged herein occurred during Does

25   13-60's normal working hours as Beverly Hills Police Department police officers, detectives.

26   sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives

27   or occurred under the pretense that either was acting as a Beverly Hills Police Department police

28   officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -7-**

1    and representatives or was made possible solely because of their position as a Beverly Hills Police
2    Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or
3    civilian employees agents and representatives.  Plaintiffs further allege that Does 13-60 acted at all
4    times herein under the auspices, direction, command, instruction, and/or control of the Beverly
5    Hills Police Department and its' Chief of Police.

6    23.   At all times relevant herein, defendants DOES 1 through 60, were residents of the County of Los
7          Angeles, and were Beverly Hills Police Department police officers, sergeants, detectives, captains,
8          lieutenants, chiefs, and/or civilian employees, agents and representatives of the  Beverly Hills
9          Police Department and employees, agents and representatives of the City of Beverly Hills. At all
10         times relevant hereto, said defendants were acting within the course and scope of their
11         employment as officers, sergeants, captains and chiefs, policy makers, and/or civilian employees of
12         the  Beverly Hills Police Department, a department and subdivision of defendant City of Beverly
13         Hills. At all times relevant herein, said defendants were acting under color of law, to wit, under the
14         color of the statutes, ordinances, regulations, policies, customs, practices and usages of CITY OF
15         BEVERLY HILLS, its chiefs', department and/or the State of California.

16   24.   Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOE
17         defendants 1 through 100, inclusive, and therefore sue these defendants by such fictitious names.
18         Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.
19         Plaintiffs are informed and believe and thereon allege that each of the fictitiously named
20         defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs'
21         injuries as herein alleged were directly and legally (proximately) caused by the acts and/or
22         omissions of said fictitiously named defendants.

23   25.   At all times relevant herein, all of the defendants engaged in the conduct alleged herein under
24         color of State Law, and through the auspices of the City of Beverly Hills and Beverly Hills Police
25         Department. Plaintiffs allege that the conduct and actions of defendants as alleged herein occurred
26         during defendants  normal working hours as Beverly Hills Police Officers, Supervisors, Managers,
27         Captains or Chief or occurred under the pretense that either was acting as a Beverly Hills Police
28         Department Officers, Supervisors, Managers, Captains or Chief  or was made possible solely

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -8-**

1    because of his/their position as a Beverly Hills Police Department Supervisors, Managers,

2    Captains or Chiefs.

### IV.  FACTUAL ALLEGATIONS

4    26.  Beverly Hills has a history of racial profiling against African Americans.

5    27.  In 1995, a civil rights lawsuit was filed by six African-Americans. Five of the African Americans

6         suing were teenagers who lived in Beverly Hills and attended local schools, and the sixth was a

7         maintenance man at a Beverly Hills church. The Beverly Hills Police Department stopped and

8         harassed African Americans without "reasonable suspicion," often pulling over African-American

9         motorists for violations such as broken taillights or detaining minors who were out past the City's

10        10 p.m. curfew. In 2000, a settlement was reached, which included the City of Beverly Hills

11        setting up a Human Relations Commission to deal with issues of racial profiling.

12   28.  In 1998, then-Assemblyman Kevin Murray filed suit after his car was stopped by police on his way

13        to celebrate a primary election victory.

14   29.  In August 2014, there was a potentially dangerous wrongful arrest of noted African American film

15        maker and producer Charles Belk. In stereotypical fashion, the BHPD thought the film maker "fit

16        the description" of a bank robbery suspect because Belk was "tall, bald, black and male."

17        Thousands of black men would fit such a vague description. When stopped, Belk behaved in

18        exemplary fashion. He stated why he was in the city. He related his impressive academic,

19        business and artistic credentials that could have been easily and quickly checked. The BHPD

20        officers did not care. Mr. Belk had to suffer the indignity of being handcuffed and forced to sit on

21        the curb in public. Then the PD successfully imposed an exorbitant amount of bail, forcing Mr.

22        Belk to sit in jail for hours before he could even speak to an attorney. Belk was never even given

23        his Miranda Rights. At the time, Belk (51 years old) was working at a pre-Emmy Awards gifting

24        suite before going to dinner. He was arrested when he walked away from a restaurant on Wilshire

25        Blvd.

26   30.  Approximately June 2015, a video entitled "Yellow Fever with Soul" was prepared by Officers

27        Charles Yang and Stanley Shen and posted on "You Tube." It made fun of African Americans and

28        Asian Americans. The police department required the video to be removed. The "Yellow Fever

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -9-**

**EXHIBIT A**        16

1    with Soul" video used a racial stereotype of an African American man holding a chicken leg in his

2    hand.   Officer Yang was shown holding a woman's buttocks in the video.  Stanley Shen made

3    comments about slavery and "master" derogatory towards African Americans.

4  31.  In March 2016, Sandra Spagnoli became the chief of police.  There were three finalists for the

5    position.  Based on information and belief, the top candidate was an African American police chief

6    with Oxnard PD., she was passed over for promotion because city council members did not want

7    the black woman to be "the face of Beverly Hills."   Spagnoli was hired instead.  Spagnoli was

8    sued repeatedly while she was the chief at San Leandro, including for various civil rights

9    violations. Defendants knew or should have known of this when the City Manager went to San

10   Leandro to obtain background information. She was a terrible selection, having been accused of

11   civil rights violations, homophobia and discrimination in her prior employment.

12 32.  DOWLING laughed about the "Yellow Fever with Soul" video and may have showed it to other

13   members of the department.  Chief Spagnoli knew or should have known of DOWLING's conduct

14   because Lt. F and Lt. N told her.  They also explained to Spagnoli that DOWLING referred to

15   African Americans as "lazy" and used other derogatory stereotypes towards African Americans.

16   Within days of being told about DOWLING's racist comments and the video, Spagnoli promoted

17   DOWLING to Lieutenant and later, captain.

18 33.  Defendant CITY did not take any type of corrective action for the "Yellow Fever with Soul" video.

19   Instead, Spagnoli sent a message to the troops that she approved of the video being displayed at

20   work.  She set an example for others to follow - if you engage in discrimination, harassment or

21   retaliation, you will be promoted like DOWLING.   The "Yellow Fever" creator, Stanley Shen was

22   promoted to Detective by Spagnoli.  This gave him a raise in pay.  Shen was assigned to a

23   specialized unit (CIT) by Spagnoli.   The female officer that Shen was promoted over is married to

24   an African American.

25 34.  By April 2016, Traffic Control Officer (TCO) Delcia Bethea-Jones asked, "Are there any black

26   people working here?"  African Americans are under represented at the BHPD, which is not

27   surprising considering the racially charged comments tolerated by defendant CITY.

28 35.  In June 2016, TCO Lozano called a citizen a "rag head."  The man was of African Ancestry.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -10-**

**EXHIBIT A**          17

36.  After August 2016, Administrative Coordinator Maria Lara called an African American woman "too old and too slow."

37.  In September 2016, TCO Lozano, who previously called a citizen  a "rag head." used profanity towards another citizen and referred to the citizen twice with the "N word" in Spanish.  The City knew of all of these actions by Lozano, but took no corrective action.

38.  In conversations before February 6, 2017, former Mayor, Nancy Krasne described African American employees as "scary looking", "if you saw him in the hood you would run the other way." He is a big guy.  He looks like an ex-Marine.  He's huge and he's a bad influence."  The investigator could not recall if Krasne also referred to the African American as a gorilla or not.

39.  Similarly, in 2017, during a management meeting prior to promotion of a new sergeant over Traffic Control Officers, Chief Spagnoli asks for input on candidates.  Members of management endorsed a black male sergeant named Dennis L. A white male sergeant was chosen by Spagnoli instead. L was the second highest ranking African American in the BHPD.  The highest ranking African American Officer was run out of the Police Department with false allegations against him regarding Whitney Houston.

40.  In 2018, a community activist had been told by numerous people of color that Beverly Hills Police Department officers were detaining them just for walking in the City. Thereafter, the activist observed a BHPD sergeant talking to a young Hispanic man on a sidewalk wearing a backpack, and stopped to observe the interaction. The young Hispanic man who had been detained told the activist that he too had been stopped just for walking on a sidewalk, then asked the sergeant if he was free to go. The sergeant  let him leave at that point, further corroborating the young man's claim that he had not been doing anything wrong, only walking.

41.  On February 9, 2020, Ashley Blackmon, an African-American female, was driving in a Toyota Rav-4 through Beverly Hills around 9:30 a.m. on her way to a Sunday morning yoga class. Blackmon was thirty years old and had recently moved from New York City to Marina Del Rey for a job at Red Bull corporate headquarters as a brand manager. BHPD officers ordered her to pull over. Blackmon immediately complied with all instructions. Yet, five BHPD officers pointed their guns at Blackmon or her car during that stop. All of these BHPD officers  had either seen her

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                      **Page -11-**

1  driving the car alone or had been made aware that the lone driver was Black. Prior to pulling

2  Blackmon over at gunpoint, BHPD officers noted her race on the radio to dispatch and requested

3  air support. Moreover, BHPD officers admitted before the stop that Blackmon and/or her car did

4  not materially match any suspects they were looking out for. Blackmon was released. No

5  reasonable suspicion or probable cause existed to ever stop her.

6  42.   On May 15, 2020, Spagnoli was forced to retire due to over a dozen lawsuits alleging misconduct

7  by her.

8  43.   On or about October 1, 2020, DOWLING's task force participated in a traffic stop of a Black

9  driver and Black passenger near Rodeo Drive. The stop involved at least four officers and three

10  police vehicles; two of the officers repeatedly refused to give their names when asked by a

11  bystander, who was attempting to film them, and treated the would-be videographer with obvious

12  hostility. Ultimately, the officers let the Black driver and passenger go without even a citation. On

13  information and belief, this was done because they had done nothing wrong. Despite the apparent

14  lack of any probable cause to stop them, the Beverly Hills officers asked the passenger for his

15  identification as well as the driver. This is a common practice in Beverly Hills and elsewhere that

16  is not typically followed for white individuals, exposing Black people to more intrusive policing

17  than white people and resulting in more Black people than white people becoming and remaining

18  entangled in the criminal justice system.

19  44.   On or about October 2, 2020, DOWLING's task force stopped and searched Versace's Vice

20  President of Mens Footwear, Salehe Bembury, a Black man who was actively holding a Versace

21  shopping bag after having shopped at a Versace location on Rodeo Drive. BHPD officers asked for

22  his ID and ran his name for warrants. Allegedly, he had jaywalked. On information and belief,

23  jaywalking in that part of Rodeo Drive is very common and, when white individuals jaywalk,

24  officers do not typically stop them, much less search them or ask them for ID to run their names

25  for warrants.

26  45.   In connection with lawsuits brought by employees of the BHPD, DOWLING was deposed.  In his

27  deposition, he admitted to calling two African American employees "lazy" and other racial

28  stereotypes.  DOWLING admitted in a prior deposition that he called two African American

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                  **Page -12-**

**EXHIBIT A**        19

1  detectives "lazy" and admitted making the statements "probably several times over years."

2  Further, DOWLING referred to the highest ranking African American in the BHPD at the time,

3  TN as "lazy."  At the time, TN was a lieutenant and a superior to DOWLING.

4  46.  Chief Spagnoli was advised by two different Lieutenants that they were concerned about

5  DOWLING being racist, but Spagnoli promoted him from Sergeant (a supervisor position) to

6  Lieutenant (a manager position) despite the concerns. Subsequently, Spagnoli promoted

7  DOWLING to captain (a manager position). Accordingly, Spagnoli as the head of the agency,

8  ratified and condoned the statements and actions of DOWLING.

9  47.  On or about March 1, 2020 to July 1, 2021, DOWLING was in charge of an operation on Rodeo

10  Drive, known as "Operation Safe Street," "Rodeo Drive Task Force" or other names.  But

11  whatever the designation, the result was the same, DOWLING, who has previously been accused

12  of racial discrimination against African Americans, was put in charge.  Officers were asked to sign

13  up to participate and receive overtime pay.

14  48.  DOWLING'S Task Force based on information and belief then went about making Rodeo Drive

15  "safe."  Based on information and belief:  To accomplish this goal and mission, the Task Force

16  arrested 106 people of whom 105 were African American, and one was Latino who looked black.

17  The "crimes" were fabricated, and if a white person engaged in such acts, he or she would not have

18  been arrested.

19  49.  Examples of the "crimes" that African Americans were arrested for include roller skating, riding a

20  scooter, jay walking a few feet outside of the cross walk, driving in the City of Beverly Hills, and

21  so on.  While African Americans as a class were arrested for such actions, Caucasians based on

22  information and belief who engaged in the same actions were not arrested.   Thus, the defendants

23  engaged in racial profiling.

24  50.  Dowling was in charge and advised the other officers of what to do, based on information and

25  belief. At all times relevant hereto, said defendant was acting within the course and scope of his

26  employment as a police officer, and Captain of the BHPD, a department and subdivision of

27  defendant City of Beverly Hills.

28  51.  On or about September 7, 2020, Defendants D.D., J.I., J.D., and DOES 1-13 were working in

**COMPLAINT AND DEMAND FOR JURY TRIAL**                    **Page -13-**

**EXHIBIT A**          20

1   DOWLING's task force. Defendants D.D., J.I., J.D., and DOES 1-13 were DOWLING's

2   subordinates, and following his orders/directions.

3   52.   Defendant DOWLING directed his subordinates to seize, interrogate, use force, falsely arrest, and

4   maliciously prosecute any African-Americans who traveled on Rodeo Drive, Beverly Hills.

5   DOWLING's intentions were to keep out African-Americans, who were deemed as "criminals."

6   53.   DOWLING set in motion a series of acts by his subordinates, or knowingly refused to terminate a

7   series of acts by his subordinates, that he knew or reasonably should have known would cause the

8   subordinates to deprives African-Americans of their rights under state and federal law.

9   54.   DOWLING knew that his subordinates were engaging in these acts and knew or reasonably should

10   have known that the subordinates' conduct would deprive African-Americans of these rights; and

11   DOWLING failed to act to prevent his subordinates from engaging in such conduct.

12   55.   DOWLING engaged in conduct that showed a reckless or callous indifference to the deprivation by

13   the subordinate of the rights of African-Americans.

14   56.   On or about September 7, 2020, WILLIAMS & WHITE were visiting the City of Beverly Hills on

15   vacation.

16   57.   WILLIAMS & WHITE were riding a scooter. WILLIAMS & WHITE were not violating any laws.

17   58.   Nevertheless, Defendants D.D., J.I., J.D., and DOES 1-13, detained WILLIAMS & WHITE

18   without any reasonable suspicion or probable cause. WILLIAMS & WHITE exercised their First

19   Amendment rights by protesting the unlawful detention and citing the continuous racial targeting

20   of individuals of color.

21   59.   Defendants D.D., J.I., J.D., and DOES 1-13 decided to ratch up their invocation of police powers

22   in retaliation. Defendants began questioning WILLIAMS & WHITE as if they were suspects in a

23   (non-existent) crime. Defendants D.D., J.I., J.D., and DOES 1-13 demanded identification to run

24   WILLIAMS & WHITE through BHPD's criminal database. WILLIAMS & WHITE peacefully

25   noted no crime had been committed and Defendants were abusing their police powers.

26   60.   Even after WILLIAMS & WHITE provided Defendants with their identification, Defendants used

27   unjustified and thus, excessive force. WILLIAMS & WHITE were handcuffed and placed under

28   arrest on multiple fabricated charges.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                        **Page -14-**

**EXHIBIT A**          21

61.    Subsequently, Defendants D.D., J.I., J.D., and DOES 1-13 had prosecuting entities file multiple charges against WILLIAMS & WHITE.

62.    After prosecutors reviewed the (fabricated) police reports and the incident, all charges against WILLIAMS & WHITE were dropped.

63.    Each of the plaintiffs in this action have suffered harm and injuries as a direct and legal result of the actions of the defendants and each of them.  The plaintiffs are entitled to economic and non economic damages in a sum in excess of the minimum jurisdiction of this court, to fees, costs, penalties, fines, and such further relief as the court deems just.

**FIRST CAUSE OF ACTION**
**VIOLATION OF BANE ACT**
**ON BEHALF OF ALL PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS**
**EXCEPT DOWLING**

64.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

65.    By threats, intimidation or coercion, Defendants D.D., J.I., J.D., and DOES 4 - 60 caused Class representatives WILLIAMS & WHITE, and each of the other members of the class to reasonably believe that if they exercised their Fourth Amendment rights, refusal to comply with illegal searches and seizures, and utilized their First Amendment Rights to free movement/free speech, Defendants D.D., J.I., J.D., and DOES 4 - 60 would commit violence against them and that Defendants had the apparent ability to carry out the threats.

66.    Defendants intended to deprive WILLIAMS, WHITE and all class members of their enjoyment of the interests protected by state and federal laws.

67.    WILLIAMS, WHITE and all class members were all harmed.

68.    Defendants conduct was a substantial factor in causing WILLIAMS, WHITE and all class members' harm.

69.    Defendants conduct was a substantial factor in causing each of the WILLIAMS, WHITE and all class members severe emotional distress.

70.    Pursuant to Cal. Govt. Code section 815.2, Defendant CITY is vicariously liable for the acts of its' employees. Here, individual defendants were acting in the course and scope of their employment when proximately harmed plaintiffs.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                      **Page -15-**

71. As a direct and legal result of the actions of defendants and each of them, plaintiffs suffered harm and economic and non economic damages in a sum according to proof and in excess of the minimum jurisdiction of this court and are entitled to costs of suit (and on the Bane Act, attorneys fees.)

72. The actions of the individual defendants were despicable and outrageous. They were malicious, fraudulent and oppressive. They were carried out with a conscious disregard of the rights, health and safety of Plaintiffs. Accordingly, punitive damages are sought against the individual defendants. Punitive damages are NOT sought against defendant City or any other Municipal defendant because Municipalities are not subject to punitive damages.

**SECOND CAUSE OF ACTION**
**VIOLATION OF RALPH ACT**
**ON BEHALF OF ALL PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS**
**EXCEPT DOWLING**

73. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

74. Defendants D.D., J.I., J.D., and DOES 4 - 60 intentionally threatened violence against WILLIAMS WHITE, and all class members whether or not Defendants D.D., J.I., J.D., and DOES 4 - 60 actually intended to carry out the threat.

75. A substantial motivating reason for Defendants D.D., J.I., J.D., and DOES 4 - 60's conduct was WILLIAMS, WHITE, and all class members' race/color.

76. A reasonable person in WILLIAMS, WHITE, and all class members position would have believed that Defendants D.D., J.I., J.D., and DOES 4 - 60 would carry out their threat.

77. A reasonable person in WILLIAMS, WHITE, and all class members' position would have been intimidated by Defendants D.D., J.I., J.D., and DOES 4 - 60's conduct.

78. WILLIAMS, WHITE, and all class members were harmed.

79. Defendants D.D., J.I., J.D., and DOES 4 - 60's conduct was a substantial factor is causing WILLIAMS, WHITE, and all class members' harm.

80. Pursuant to Cal. Govt. Code section 815.2, Defendant CITY is vicariously liable for the acts of its' employees. Here, individual defendants were acting in the course and scope of their employment when proximately harmed plaintiffs.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                  **Page -16-**

**EXHIBIT A**                    23

81. As a direct and legal result of the actions of defendants and each of them, plaintiffs suffered harm and economic and non economic damages in a sum according to proof and in excess of the minimum jurisdiction of this court and is entitled to costs of suit (and on the Ralph Act, attorneys fees and penalties.)

82. The actions of the individual Doe defendants were despicable and outrageous.  They were malicious, fraudulent and oppressive.   They were carried out with a conscious disregard of the rights, health and safety of Plaintiffs.  Accordingly, punitive damages are sought against the individual Doe defendants.  Punitive damages are NOT sought against defendant City or any other Municipal defendant because Municipalities are not subject to punitive damages.

### THIRD CAUSE OF ACTION
### VIOLATION OF PLAINTIFFS' PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS THROUGH MALICIOUS PROSECUTION/FALSE IMPRISONMENT
### ON BEHALF OF ALL PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS EXCEPT CITY

83. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

84. This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution for violation of Plaintiffs' procedural and substantive due process rights and the violation thereof resulting from the malicious prosecution by the defendants named herein and resulting false imprisonment.

85. As delineated above,  WILLIAMS, WHITE, and all class members were wrongfully arrested without probable cause, and charged with multiple criminal counts based upon the false charges, statements, police reports, evidence and testimony presented by Defendants D.D., J.I., J.D., and DOES 4 - 60.

86. Said defendants, in violation of Penal Code section 118.1 knowingly filed materially false police reports, made materially false statements to investigators and prosecutors that  WILLIAMS, WHITE, and all class members had violated numerous provisions of the California Penal Code, and presented falsified evidence, all for the purpose of having  WILLIAMS, WHITE, and all class members wrongfully, unjustly and falsely charged with crimes, and to ensure that  WILLIAMS, WHITE, and all class members would be falsely and wrongfully prosecuted and imprisoned.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -17-**

**EXHIBIT A**          24

87. At no time did said defendants have probable cause to arrest and charge WILLIAMS, WHITE, and all class members for any crime or to recommend that they be prosecuted. Notwithstanding this, with malice and conscious disregard for his rights to due process, said defendants presented the above false evidence and recommended that WILLIAMS. WHITE, and all class members be charged and prosecuted. Thereafter, they meaningfully participated in his prosecution to ensure their wrongful conviction and wrongful imprisonment.

88. As the actual and proximate result of the acts and omissions of said defendants as described herein, Plaintiffs were made to lose their freedom and liberty, this in violation of the Fourteenth Amendment's procedural and substantive due process guarantees.

89. At all relevant times herein, DOWLING was a captain at BHPD, which is the third-highest rank at BHPD. DOWLING was in charge of an operation on Rodeo Drive, known as "Operation Safe Street," "Rodeo Drive Task Force" or other names. At all relevant times herein, DOWLING acted under color of state law. Defendants D.D., J.I., J.D., and DOES 4 - 60 were members of the task force and DOWLING's subordinates.

90. Defendant DOWLING directed his subordinates in the acts that deprived WILLIAMS, WHITE, and all class members of their rights.

91. DOWLING set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates, that he knew or reasonably should have known would cause the subordinates to deprives WILLIAMS, WHITE, and all class members of these rights.

92. DOWLING knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive WILLIAMS, WHITE, and all class members of these rights; and DOWLING failed to act to prevent his subordinates from engaging in such conduct.

93. DOWLING engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

94. DOWLING's conduct was so closely related to the deprivation of WILLIAMS, WHITE, and all class members' rights as to be the moving force that caused the ultimate injury.

95. As a direct and legal result of the actions of defendants and each of them, plaintiffs suffered harm

**COMPLAINT AND DEMAND FOR JURY TRIAL** Page -18-

and economic and non economic damages in a sum according to proof and in excess of the

minimum jurisdiction of this court and is entitled to costs of suit. Further, plaintiffs have incurred

attorneys fees and costs for defending the criminal claims. Plaintiffs have also incurred costs in

relation to the criminal case, including without limitation charges for bail, attorneys fees and other

special damages all in a sum according to proof at time of trial.

96.   In addition to causing special damages for lost wages, earnings opportunities, promotional

opportunities which include future raises and earnings, lost pension benefits, medical,

psychological and other expenses, the plaintiffs have suffered with general damages including

without limitation pain, suffering, emotional distress, fear, trepidation, lost reputation, and other

harms to be proven at time of trial, plus attorneys fees, litigation costs and any applicable fines or

penalties.

97.   The aforementioned acts of said defendants were willful, wanton, malicious, despicable and

oppressive and said misconduct shocks the conscience thereby justifying the awarding of

exemplary and punitive damages as to all defendants.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE**
**SEARCHES AND SEIZURES**
**ON BEHALF OF ALL PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS**
**EXCEPT CITY**

98.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this

reference with the same effect as if realleged herein.

99.   This action is brought pursuant to 42 U.S.C. §1983 and the Fourth Amendment of the United

States Constitution.

100.   At all times relevant hereto, Plaintiffs possessed the right, guaranteed by the Fourth Amendment of

the United States Constitution, to be free from unreasonable searches and seizures by peace

officers acting under the color of law.

101.   As described in above, Defendants D.D., J.I., J.D., and DOES 4 - 60 violated WILLIAMS,

WHITE, and all class members' Fourth Amendment rights by unlawfully and unreasonably

detaining, handcuffing, arresting and imprisoning them without reasonable suspicion or probable

cause.

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                      **Page -19-**

102. In doing these things, said defendants acted specifically with the intent to deprive WILLIAMS, WHITE, and all class members of their constitutional rights under the Fourth Amendment to be free from unreasonable seizures.

103. At all relevant times herein, DOWLING was a captain at BHPD, which is the third-highest rank at BHPD. DOWLING was in charge of an operation on Rodeo Drive, known as "Operation Safe Street," "Rodeo Drive Task Force" or other names. At all relevant times herein, DOWLING acted under color of state law. Defendants D.D., J.I., J.D., and DOES 4 - 60 were members of the task force and DOWLING's subordinates.

104. Defendant DOWLING directed his subordinates in the acts that deprived WILLIAMS, WHITE, and all class members of their rights.

105. DOWLING set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by his subordinates, that he knew or reasonably should have known would cause the subordinates to deprives WILLIAMS, WHITE, and all class members of these rights.

106. DOWLING knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive WILLIAMS, WHITE, and all class members of these rights; and DOWLING failed to act to prevent his subordinates from engaging in such conduct.

107. DOWLING engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

108. DOWLING's conduct was so closely related to the deprivation of WILLIAMS, WHITE, and all class members' rights as to be the moving force that caused the ultimate injury.

109. Said defendants subjected WILLIAMS, WHITE, and all class members to the aforementioned deprivations by either actual malice, deliberate indifference or a reckless disregard of her rights under the U.S. Constitution.

110. As the actual and proximate result of the acts and omissions of said defendants as described herein, Plaintiffs were made to lose their freedom and liberty for the period stated above, this in violation of the Fourteenth Amendment's procedural and substantive due process guarantees.

111. As a direct and legal result of the actions of defendants and each of them, plaintiffs suffered harm

**COMPLAINT AND DEMAND FOR JURY TRIAL**                    **Page -20-**

**EXHIBIT A**        27

1   and economic and non economic damages in a sum according to proof and in excess of the

2   minimum jurisdiction of this court and is entitled to costs of suit and attorneys fees.

3   112.   The aforementioned acts of said defendants were willful, wanton, malicious, despicable and

4   oppressive and said misconduct shocks the conscience thereby justifying the awarding of

5   exemplary and punitive damages as to all defendants.

6                          **FIFTH CAUSE OF ACTION**
                    **MUNICIPAL LIABILITY FOR VIOLATION**
7                       **OF CONSTITUTIONAL RIGHTS**
             **ON BEHALF OF ALL PLAINTIFFS AND THE CLASS**
8              **AGAINST DEFENDANT CITY OF BEVERLY HILLS**

9   113.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this

10   reference with the same effect as if realleged herein.  However, there are no punitive damages

11   sought against the City.

12   114.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the

13   Fourth and Fourteenth Amendments.

14   115.   On the date of Plaintiffs' arrest/detention, Defendants DOWLING, D.D., J.I., J.D., and DOES 1 -

15   60 , acting within the course and scope of their duties as peace officers of the City of Beverly Hills,

16   deprived Plaintiffs of their rights to be free from unreasonable seizures, unlawful arrests, and

17   excessive force as delineated herein above, and thereafter in violation of Plaintiffs' due process

18   rights proceeded to falsify evidence, and submit false police reports so as to ensure that Plaintiffs

19   would be wrongfully convicted.

20   116.   At the time of these constitutional violations, defendants CITY OF BEVERLY HILLS had in

21   place, and had ratified customs and practices which permitted and encouraged their police officers

22   to unjustifiably, unreasonably and in violation of the Fourth and Fourteenth Amendments, to

23   unlawfully detain/arrest persons without probable cause.

24   117.   Said customs and practices also called for the City of Beverly Hills and its Police Department not

25   to discipline, prosecute, or objectively and/or independently investigate or in any way deal with or

26   respond to known incidents and complaints of false arrests, falsification of evidence, the

27   preparation of false police reports to justify such wrongful conduct, and the giving of false

28   testimony in trial to cover-up and conceal such wrongful conduct by officers of the Beverly Hills

**COMPLAINT AND DEMAND FOR JURY TRIAL**                              **Page -21-**

1    Police Department, and for the City of Beverly Hills to fail to objectively and/or independently

2    investigate or in any way deal with or respond to or the related claims and lawsuits made as a

3    result of such false arrests and related misconduct.

4  118.    Defendant CITY OF BEVERLY HILLS was aware of and were deliberately indifferent to a

5    pervasive and widespread pattern and practice with the BHPD of concealing known instances of

6    evidence planting, evidence tampering, perjury, falsified police reports, witness coercion,

7    excessive force, on-duty criminal acts and on-duty acts of moral turpitude.  Said defendants failed

8    to take any reasonable measures to correct this pattern and practice and as a result said city and

9    persons have been deliberately indifferent to the civil rights violations which resulted, including

10    those which are described in the present claim.

11  119.    Said customs and practices called for and led to the refusal of said defendants to investigate

12    complaints of previous incidents of false and unlawful arrests, the filing of false police reports to

13    conceal such misconduct, the falsification of evidence and perjury and, instead, officially claim

14    that such incidents were justified and proper.

15  120.    Said customs and practices called for said defendants, by means of inaction and coverup, to

16    encourage an atmosphere of lawlessness within the police department and to encourage their

17    police officers to believe that improper arrest of visitors to the City of Beverly Hills or persons

18    present therein, including members of minority groups, the planting of evidence, the submission of

19    false police reports, and the commission of perjury was permissible and to believe that unlawful

20    acts of falsification of evidence and perjury would be overlooked without discipline or other

21    official ramifications.

22  121.    Said customs and practices of said defendants and each of them evidenced a deliberate

23    indifference to the violations of the constitutional rights of Plaintiffs.  This indifference was

24    manifested by the failure to change, correct, revoke, or rescind or otherwise address said customs

25    and practices in light of prior knowledge by said defendants and their subordinate policymakers of

26    indistinguishably similar incidents of unjustified and unreasonable and unlawful arrests,

27    falsification of evidence, evidence tampering, submission of false police reports and perjury.

28  122.    Deliberate indifference to the civil rights of victims of the BHPD's unlawful arrests, falsified

**COMPLAINT AND DEMAND FOR JURY TRIAL**        **Page -22-**

1   evidence, false and misleading police reports and false and perjurious testimony was also

2   evidenced by said defendants by their ignoring of the history and pattern of prior civil lawsuits

3   alleging civil rights violations, similar to those alleged herein, arising from such misconduct and

4   the related payment of judgments to such individuals.

5   123.   Deliberate indifference to the civil rights of victims of the BHPD's unlawful arrests, falsified

6   evidence, false and misleading police reports and false and perjurious testimony was also

7   evidenced by said defendants by their ignoring of the history and pattern of employment lawsuits

8   alleging racial discrimination/harassment/retaliation, which revealed racial animus harbored by

9   certain members of BHPD that are similar to those alleged herein.

10  124.   Deliberate indifference is also evidenced by an absence of or by maintenance of an inadequate

11  system of tort claims tracking and by maintaining an inadequate system of officer discipline and

12  independent and objective investigation by the City of Beverly Hills and its police department

13  which failed to identify and investigate instances of false and unlawful arrests, falsification of

14  evidence, submission of false police reports and perjury.

15  125.   Deliberate indifference to the civil rights of victims of the BHPD's unlawful arrests and falsified

16  evidence was also evidenced by the failure of  by said defendants to adequately train and more

17  closely supervise or retrain officers and/or discipline or recommend prosecution of those officers

18  who falsified evidence, tampered with evidence, submitted false and misleading police reports,

19  and/or committed perjury.

20  126.   Other systemic deficiencies of said defendants which indicated, and continue to indicate, a

21  deliberate indifference to the violations of the civil rights by the officers of the Beverly Hills

22  Police Department include:

23     a.   preparation of investigative reports designed to vindicate and/or justify false and unlawful

24          arrests;

25     b.   preparation of investigative reports which uncritically rely solely on the word of BHPD

26          officers involved in unlawful arrests or in the planting of evidence and which

27          systematically fail to credit testimony by non-officer witnesses;

28     c.   preparation of investigative reports which omit factual information and physical evidence

**COMPLAINT AND DEMAND FOR JURY TRIAL**                              **Page -23-**

**EXHIBIT A**          30

1     which contradicts the accounts of the officers involved;

2     d.     issuance of public statements exonerating officers involved in such incidents prior to the

3     completion of investigations of wrongful arrests;

4     e.     failure to maintain centralized department-wide system for the tracking and

5     monitoring tort claims and lawsuits alleging false arrests, planting of evidence,

6     perjury, and abuse of authority individual officers so as to identify those officers

7     who engage in a pattern of abuse of police authority and police misconduct.

8     127.   Said defendants also maintained a system of grossly inadequate training pertaining to the lawful

9     making of arrests, police ethics, the law pertaining to searches and seizures, testifying in trial and

10    perjury, the collection of evidence, and the preparation of police reports.

11    128.   Deliberate indifference to the civil rights victims of the BHPD's false arrests, planting of evidence,

12    and perjury was also evidenced by said defendants' failure to implement an officer discipline

13    system which would conduct meaningful and independent investigations of citizen complaints of

14    false arrests, falsified evidence, evidence tampering, authoring and filing of false and misleading

15    police reports, and the presentation of false testimony at trial.

16    129.   The foregoing acts, omissions, and systemic deficiencies are practices and customs of said

17    defendants and such caused, permitted and/or allowed under official sanction Defendants

18    DOWLING, D.D., J.I., J.D., and DOES 1 - 60, to be unaware of, or intentionally overlook and

19    ignore, the rules and laws governing the probable cause requirements for arrests, the falsification

20    of evidence or the tampering with evidence, the submission of false police reports and the

21    commission of perjury in criminal trials. The foregoing acts, omissions, and systemic deficiencies

22    are practices and customs of said defendants and such caused, permitted and/or allowed under

23    official sanction said police officer defendants to believe that arrests are entirely within the

24    discretion of the officer and that improper and unlawful arrests, evidence falsification, filing of

25    false and misleading police reports, and the commission of perjury would not be objectively,

26    thoroughly and/or properly investigated, all with the foreseeable result that defendants' officers

27    would make false and unlawful arrests, and falsify evidence, submit false and misleading police

28    reports, and commit perjury, and thereby violate the civil rights of the citizens of this state with

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -24-**

**EXHIBIT A**     31

1     whom said officers would come into contact with.

2   130.   As a result of the aforementioned acts, omissions, systematic deficiencies, customs and practices,

3          Defendants DOWLING, D.D., J.I., J.D., and DOES 1 - 60 unlawfully arrested Plaintiffs, and,

4          developed and implemented a plan to falsely accuse Plaintiffs of unlawfully violating various laws,

5          and to secure their prosecution through the offering of false and misleading police reports and the

6          presentation of falsified evidence and perjurious testimony.

7   131.   As a direct and legal result of the defendants actions, the plaintiffs were harmed, and are entitled to

8          economic and non economic damages in excess of the minimum jurisdiction of this court, to

9          attorneys fees, litigation costs and such other relief as the court deems just and proper.

10

11  WHEREFORE, Plaintiffs pray for the following:

12      1.     Compensation for both economic and non-economic damages suffered and to be suffered

13  in a sum according to proof at time of trial;

14      2.     Medical, legal and other expenses incurred by Plaintiffs;

15      3.     Compensatory damages and nominal damages caused by deprivation of Plaintiffs'

16  constitutional rights;

17      4.     Litigation costs;

18      5.     Attorneys' fees, as allowed by statute;

19      6.     Interest;

20      7.     Civil Penalties as allowed by law.

21      8.     Punitive damages (not as to Defendant CITY);

22      9.     Any other relief or damages allowed by law, or statutes not set out above, and such further

23  relief as this Court deems just and proper at conclusion of trial.

24

25

26  \\

27  \\

28  \\

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**                          **Page -25-**

Dated:  August 30, 2021                    Respectfully Submitted,
                                           Law Offices of Goldberg & Gage
                                           A Partnership of Professional Law Corporations


                                           By_____/s/ Bradley C. Gage_____
                                             Bradley C. Gage
                                             Milad Sadr
                                             Terry M. Goldberg
                                           Attorneys for Plaintiffs

O:\W\WILLIAMS, JASMINE V BHPD\PLEADINGS\COMPLAINT\08-30-21 - REVISED COMPLAINT FINAL\08-30-21- COMPLAINT - Final rev.wpd

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    **Page -26-**

**EXHIBIT A**     33