UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE WILLIAMS, et al., on their own behalf and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF BEVERLY HILLS, et al.,<br><br>    Defendants. | Case No. CV 21-8698 FMO (RAOx)<br><br>**ORDER RE: PENDING MOTIONS** |

Having reviewed and considered all the briefing filed with respect to defendants' Motion to Disqualify Bradley C. Gage and the Law Firm of Goldberg and Gage as Plaintiffs' Counsel (Dkt. 123, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

Plaintiffs seek to represent a class consisting of "[a]ll Black people who were detained or arrested by the City of Beverly Hills Police Department ('BHPD') from August 30, 2019 through August 30, 2021 without being convicted of any crime." (Dkt. 43, Second Amended Complaint

---

[1] Because the parties are familiar with the facts of this case, the court will discuss them only as necessary.

("SAC") at ¶ 2). Plaintiffs assert various claims arising out of, among other things, an alleged "policy, practice and widespread custom to demand identification of Black People, search them for weapons, detain them and falsely arrest them with excessive force and false charges[.]" (Id. at ¶ 105). One of the named defendants is former Interim Chief Dominick Rivetti ("Rivetti"). (See id. at ¶ 29). Plaintiffs are represented by, among others, attorney Bradley C. Gage ("Gage"). (See Dkt. 123, Motion at 9).

Defendants seek to disqualify Gage and his law firm, contending that he "had a prior attorney-client relationship with Defendant Rivetti, and that Mr. Gage" had a "prior legal consulting relationship with Defendant Rivetti." (Dkt. 123, Motion at 8). According to defendants, "[a]s a result of these relationships, Mr. Gage obtained confidential information about Defendant Rivetti and the BHPD, both of whom Mr. Gage has named as defendants in this action." (Id.). Plaintiffs dispute this characterization and argue that "Rivetti was never a client and had no attorney-client relationship" with Gage. (Dkt. 125, Plaintiffs' Opposition to Motion for Disqualification [] ("Opposition") at 3).

## **LEGAL STANDARD**

"A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Kennedy v. Eldridge, 201 Cal.App.4th 1197, 1204 (2011) (internal alteration and quotation marks omitted). A "motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice." Reading Int'l, Inc. v. Malulani Grp., Ltd., 814 F.3d 1046, 1053 (9th Cir. 2016) (internal quotation marks omitted). It is "a drastic measure that is generally disfavored and imposed only when absolutely necessary." Beltran v. Avon Prods., Inc., 867 F.Supp.2d 1068, 1077 (C.D. Cal. 2012). "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." Optyl Eyewar Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotation marks omitted).

Motions to disqualify counsel are governed by state law. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir.2009) ("By virtue of the district court's local rules, California law controls

2

whether an ethical violation occurred."). California courts apply a balancing test to determine whether disqualification is proper. See Exp. Dev. Can. v. Ese Elecs. Inc., 2017 WL 3122157, *5 (C.D. Cal. 2017). The balancing factors include:

> (1) [A] party's right to counsel of choice; (2) an attorney's interest in representing a client; (3) the financial burden on a client of replacing disqualified counsel; (4) any tactical abuse underlying a disqualification proceeding, and (5) the fundamental princip[le] that fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

Id. (citing William H. Raley Co. v. Super. Ct., 149 Cal.App.3d 1042, 1048 (1983)).

"The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." People v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 1145 (1999). Ultimately, the decision to disqualify counsel is within the district court's discretion. See Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).

**DISCUSSION**

I.    STANDING.

California law follows the general rule that a party lacks standing to disqualify an attorney unless that party has a present or past attorney-client relationship with that attorney. See Great Lakes Const., Inc. v. Burman, 186 Cal.App.4th 1347, 1356 (2010). This general rule has been expanded in certain circumstances, and courts have found standing to disqualify if there was a breach of the duty of confidentiality or other fiduciary duty. See Dino v. Pelayo, 145 Cal.App.4th 347, 352 (2006). Thus, defendants must establish as a threshold matter the existence of some sort of relationship between Gage and Rivetti that gives rise to such a duty.

Defendants identify three prior contacts between Gage and Rivetti that, they assert, confer standing to seek disqualification of Gage. (See Dkt. 123, Motion at 9-13). The court considers each in turn.

    A.    Prior Representation of Martha Rivetti.

First, defendants argue that Gage's representations of Rivetti's wife, Martha Rivetti, in a

lawsuit against a medical device manufacturer in 1993 and in a medical malpractice lawsuit in 1999 confer standing. (See Dkt. 123, Motion at 10). According to defendants, "[d]uring the course of the litigation in those matters, Defendant Rivetti participated in multiple consultations at Mr. Gage's office, where Mr. Gage became privy to personal information about Defendant Rivetti and the Rivetti family. . . . Mr. Gage also potentially learned about the Rivetti's personal finances during that time." (Id.); (see also Dkt. 123, Declaration of Dominick J. Rivetti ("Rivetti Declaration") at ¶¶ 7-9).

The court is not persuaded that there is anything about Gage's representation of Mrs. Rivetti over two decades ago that bears on this litigation. Nor is the court persuaded that Rivetti's equivocal statement that Gage "potentially learned about the Rivetti's personal finances" in 1993 or 1999, (see Dkt. 123, Motion at 10), establishes a duty relevant to this case. (See Dkt. 123, Rivetti Declaration at ¶ 9). Although defendants assert without substantiation that Gage "acted as the Rivetti family attorney[,]" (Dkt. 128, Reply by Defendants [] to Plaintiffs' Opposition [] ("Reply") at 9), the fact that Gage served as Mrs. Rivetti's lawyer did not make him Mr. Rivetti's lawyer. See Thayer v. Kabateck Brown Kellner LLP, 207 Cal.App.4th 141, 160 (2012) ("An attorney who undertakes to represent one spouse does not become the legal representative of that client's wife or husband[.]"). Defendants appear to acknowledge the weakness of this argument, noting that "the prior attorney-client relationship between Mr. Gage and Mrs. Rivetti in two lawsuits is unlikely to outright mandate his disqualification here." (Dkt. 128, Reply at 6). In any even, the court finds that Gage's prior representations of Mrs. Rivetti do not confer standing to bring the Motion.

B.   Consultation with Rivetti as a Potential Expert.

Next, defendants assert that "[i]n past litigation involving the City, Mr. Gage . . . consulted with Defendant Rivetti regarding his expertise in law enforcement and the inner-workings of the BHPD, which now form a basis for his new clients' (i.e., Plaintiffs') allegations in the current litigation against the City and Defendant Rivetti." (Dkt. 123, Motion at 10). Specifically, defendants assert that "[i]n the Rosen matter, Mr. Gage consulted with Defendant Rivetti as a potential expert on multiple occasions, both in-person at Mr. Gage's office and through text message, where they discussed the case and the inner-workings of the BHPD." (Id. at 11); (Dkt.

4

123, Rivetti Declaration at ¶¶ 11-12); (Dkt. 128, Reply at 7-8).

Defendants do not contend that Gage's discussions about retaining Rivetti as an expert gave rise to an attorney-client relationship. (See, generally, Dkt. 123, Motion). Rather, they argue that Rivetti's disclosure of alleged confidential information to Gage gave rise to a third-party confidentiality obligation under California Rule of Professional Conduct 1.7. (See id. at 19-20). Defendants, however, offer scant support for their claim that a confidentiality obligation exists between Gage and Rivetti. (See, generally, id.). Although the Rivetti Declaration states that "Mr. Gage and I discussed the inner-workings of the Beverly Hills Police Department during our discussion about the Rosen case[,]" (Dkt. 123, Rivetti Declaration at ¶ 11), none of defendants' exhibits or briefing – even assuming there was a duty of confidentiality under the circumstances described in the Rosen case – demonstrate that these discussions entailed the disclosure of confidential information. (See, generally, Dkt. 123, Motion); (Dkt. 128, Reply); see Wu v. O'Gara Coach Co., LLC, 38 Cal.App.5th 1069, 1083 (2019) ("Under California law a law firm is not subject to disqualification because one of its attorneys possesses information concerning an adversary's general business practices[.]").

In any event, the court is not persuaded that defendants would have standing to move to disqualify plaintiffs' counsel even if confidential information had been disclosed. First, none of defendants' cited cases, (see Dkt. 123, Motion at 20), support the proposition that voluntary disclosures of information by a consulting witness always give rise to an ongoing confidentiality obligation. Rather, each case defendants cite in which an attorney was found to have a duty of confidentiality to a nonclient involved the disclosure of information by the nonclient in connection with the attorney's representation of a client who had a close relationship with the nonclient. For example, in Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal.App.4th 223 (1999), a duty of confidentiality was recognized where a lawyer received confidential information from a company in the course of the lawyer's representation of that company's insurance underwriter. See id. at 227. Likewise, in Kennedy, the court concluded that the relationship between the former client and the disclosing nonclient was so substantial that they constituted "a single unity for purposes of determining whether an ethical conflict exists." 201 Cal.App.4th at 1208. No

equivalent relationship exists between Rivetti and Gage's client in Rosen – a police officer who alleged workplace discrimination.

C.  Gage's Contact with Rivetti in Moreno.

Finally, defendants contend that "Mr. Gage and his firm should be disqualified due to their prior representation of Defendant Rivetti in the Moreno case[.]" (Dkt. 123, Motion at 16). Defendants raise four arguments in support of their contention that Gage represented Rivetti in that case: "[1] Mr. Gage drafted and served an objection in discovery on Rivetti's behalf, [2] contacted Rivetti to report the same, [3] then further counseled Rivetti regarding the litigation[, and] [4] advised Rivetti that he wanted to prepare a Declaration on his behalf, and repeatedly told Rivetti that he would protect his interest in the matter." (Dkt. 128, Reply at 10).

The court agrees with plaintiffs that Gage never represented Rivetti. (See Dkt. 125, Opposition at 16-17). As an initial matter, the court concludes that defendants have not shown that confidential information was communicated during Gage's interactions with Rivetti during the Moreno case. (See, generally, Dkt. 123, Motion at 10-13, 18-19, 21-22). In any event, the objection to discovery that Gage prepared in Moreno appears to be nothing more than a standard letter between parties raising objections to the production of documents and records. (See Dkt. 123-1, Exh. 5 at ECF No. 1760). Indeed, out of the 28 discovery responses, only one pertains to Rivetti and that response makes clear that "as to David Hamel, David Snowden and Dominck Rivetti while we are not their attorneys, we note they may be witnesses[.]" (Id.) (emphasis added). Defendants ask the court to read the plain language of the discovery response and take it to mean the opposite. The court declines to do so. Instead, as with Rosen, Rivetti appears to have been nothing more than a potential witness for Gage's client. Further, the court is not persuaded that the act of notifying Rivetti about the discovery objection transformed the relationship from attorney-witness to attorney-client.

As to defendants' arguments that Gage "counseled Rivetti regarding the litigation" and that he "advised Rivetti that he wanted to prepare a Declaration on his behalf[,]" the court is similarly unconvinced. (Dkt. 128, Reply at 10). The declaration at issue appears to have been a declaration in support of Gage's position on the discovery dispute. (See Dkt. 123-1, Exh. 5 at ECF

6

1  No.1794). Moreover, as above, the declaration as well as the updates sent from Gage to Rivetti
2  all make clear that Gage was contacting Rivetti in connection with Rivetti's potential testimony as
3  a witness, not as part of his representation of Rivetti. (See id.); (See id., Exh. 4). As with Rosen,
4  an attorney-witness relationship is not tantamount to an attorney-client relationship. See DeLuca
5  v. State Fish Co., 217 Cal.App.4th 671, 688 (2013) (noting that the attorney-client privilege
6  "applies to communications made by the client or the attorney to the expert"). In short, because
7  the court concludes that Rivetti is neither a former client of Gage's, nor owed a duty of
8  confidentiality, defendants lack standing to bring the instant motion.

II. DISQUALIFICATION FACTORS.

Because the court concludes that defendants lack standing to seek disqualification, it is unnecessary to consider the factors for disqualification in detail. Nevertheless, the court notes that the relevant factors appear to weigh in plaintiffs' favor. See Export Development, 2017 WL 3122157, at *5. First, plaintiffs are entitled to their counsel of choice – particularly where, as here, counsel is well-versed in the type of litigation and issues related to the representation. See id. Second, this litigation is at an advanced stage of discovery, thus plaintiffs' counsel have a clear interest in continuing to represent plaintiffs. See id.

The third factor neither favors nor disfavors disqualification and the court lacks information to make a determination about the financial burden that disqualification would impose on the named plaintiffs and the class. (See, generally, Dkt. 125, Opposition). The fourth factor disfavors disqualification, as the court is inclined to agree with plaintiffs that it is likely that "Defendants have tried to gain a litigation advantage by using this motion, as a way to refuse providing any discovery, refusal to produce witnesses for depositions, and refusal to stipulate to extend the deadline for [plaintiffs' class certification motion[.]" (Id. at 20). Finally, the fifth factor neither favors not disfavors disqualification, for, as above, the court is inclined to agree with plaintiffs that defendants have not demonstrated that any confidential information was shared by Rivetti with Gage, or that the information that was shared is material to the instant case. (See id. at 18). The court does, however, note that defense counsel's joint representation of both a public entity and individual employees may raise conflict issues unless defendants have made "voluntary, knowing,

and intelligent waiver" of their rights. United States v. Martinez, 143 F.3d 1266, 1269 (9th Cir. 1998) (internal quotation marks omitted). The court assumes that defense counsel has obtained the requisite waivers of conflict of interest from their clients. See Ballew v. City of Pasadena, 2020 WL 4919384, *8 (C.D. Cal. 2020) (where counsel sought to represent a city, police department, and individual officers, court required counsel to provide, among other things, "[a]ll conflict waivers signed by all defendants in connection with this case" and a declaration addressing California Rule of Professional Conduct 1.7 and whether defense counsel "received confidential information within the meaning of Cal. Bus. & Prof. Code § 6068(e)(1) and Cal. R. Prof. Conduct 1.6"); Ixta v. County of Ventura, 2022 WL 19237952, *3 (C.D. Cal. 2022) ("[T]he Court acknowledges that a potential conflict may arise from simultaneous representation of officer defendants and government entity defendants in a civil rights case under 42 U.S.C. § 1983. The Court deems it prudent to review in camera Defendants' conflict waivers to ensure that Defendants voluntarily, knowingly, and intelligently waived potential conflicts.") (citations omitted).

**CONCLUSION**

Based on the foregoing, IT IS ORDERED that:

1. Defendants' Motion **(Document No. 123)** is **denied**.

2. Defendants' Motion for Review of the Magistrate Judge's Order **(Document No. 153)** is **denied as moot**.

Dated this 4th day of May, 2023.

                                                          /s/
                                    Fernando M. Olguin
                                  United States District Judge