KOLAR & ASSOCIATES, A LAW CORPORATION
ELIZABETH L. KOLAR – State Bar No. 168935
JEANNE L. TOLLISON – State Bar No. 238970
jeanne@kolarandassociates.com
12241 Newport Avenue
Santa Ana, California 92705
Telephone: (714) 544-0041

SWANSON, MARTIN & BELL, LLP
SUSAN E. SULLIVAN – Illinois State Bar No. 6238201 (*Pro Hac Vice*)
ssullivan@smbtrials.com
ARTHUR J. RELIFORD – Illinois State Bar No. 6270485 (*Pro Hac Vice*)
areliford@smbtrials.com
ANDREW A. LOTHSON – Illinois State Bar No. 6297061 (*Pro Hac Vice*)
alothson@smbtrials.com
330 N. Wabash Ave., Suite 3300
Chicago, Illinois 60611
Telephone: (312) 321-9100
Facsimile: (312) 321-0990

Attorneys for Defendants CITY OF BEVERLY HILLS, a public entity, SANDRA SPAGNOLI, DOMINICK RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER BILLY BLAIR, OFFICER JERRY WHITTAKER, and OFFICER JESSE LYGA, as employees of the City of Beverly Hills, a public entity.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE WILLIAMS, KHALIL WHITE, JOSEPH NETT, LAKISHA SWIFT, CAMERON ROGERS and SHEPHERD YORK in Their Individual and Representative Capacities on Behalf of a Class of All Persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BEVERLY HILLS, SANDRA SPAGNOLI, formerly sued as Doe 1; DOMINICK RIVETTI formerly sued as DOE 2, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND [FORMERLY D.D.], OFFICER JON ILUSORIO [FORMERLY J.I.], OFFICER JONATHAN DE LA CRUZ | Case No.: 2:21-cv-08698-FMO-RAO<br><br>Hon. Fernando M. Olguin<br>United States District Court Judge<br>Courtroom 6D<br><br>**DEFENDANTS CITY OF BEVERLY HILLS, SANDRA SPAGNOLI, DOMINICK, RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER, BILLY BLAIR, OFFIER JERRY WHITTAKER, AND OFFICER JESSE LYGA'S NOTICE OF MOTION AND** |

[FORMERLY J.D.], SGT. BILLY FAIR [FORMERLY SUED AS DOE 3], OFFICER JAMES KRUG [FORMERLY SUED AS DOE 4], OFFICER BILLY BLAIR [FORMERLY SUED AS DOE 5]. OFFICER JERRY WHITTAKER [FORMERLY SUED AS DOE 6], OFFICER JESSE LYGA [FORMERLY SUED AS DOE 7], inclusive, all sued in their individual and official capacities,

Defendants.

**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**[Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(f), 23(d)(1)(D), 16(f), L.R. 15-1]**
<u>HEARING DATES PENDING</u>:

Type: Defendants' Motion to Dismiss
Date:  August 17, 2023
Time: 10:00 a.m.
Dept. 6D

Last Day for Motion for Class Cert.: 12/13/2023

Fact Discovery Cut-off: 08/29/2023

Expert Discovery Cut-off**: 11/13/2023

TO: PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 17, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D of the above-entitled Court, located at the First Street U.S. Courthouse, 350 W 1st Street, Los Angeles, California, Defendants CITY OF BEVERLY HILLS ("City"), SANDRA SPAGNOLI ("Spagnoli"), DOMINICK RIVETTI ("Rivetti"), CAPTAIN SCOTT DOWLING ("Dowling"), SERGEANT DALE DRUMMOND ("Drummond"), OFFICER JON ILUSORIO ("Ilusorio"), OFFICER JONATHAN DE LA CRUZ ("De La Cruz"), SGT. BILLY FAIR ("Fair"), OFFICER JAMES KRUG ("Krug"), OFFICER BILLY BLAIR ("Blair"), OFFICER JERRY WHITTAKER, ("Whittaker"), and OFFICER JESSE LYGA ("Lyga") (sometimes collectively "Individual Defendants") will move the Court to dismiss the Third Amended Complaint ("TAC") of Plaintiffs JASMINE WILLIAMS, KHALIL WHITE, JOSEPH NETT, LAKISHA SWIFT, CAMERON ROGERS and SHEPHERD YORK  in Their Individual and Representative Capacities on Behalf of a Class of All Persons similarly situated (sometimes collectively "Plaintiffs") under Federal

1   Rule of Civil Procedure 12(b)(6) on the ground it fails to state sufficient facts to
2   support the claims alleged, and will move to dismiss or strike other aspects of the
3   Putative Class Action Claims under Federal Rules of Civil Procedure 12(b)(1), 12(f)
4   and 23(d)(1)(D).

5       This motion is made following a pre-filing meet and confer under Local Rule
6   7-3 that began on May 22, 2023, and concluded on July 12, 2023. (*See* Declaration
7   of Susan E. Sullivan "Sullivan Decl." at ¶2). On May 22, 2023, Defendants' counsel
8   met and conferred with Plaintiffs' counsel on a court-reported videoconference for
9   one hour and twenty minutes to discuss Plaintiffs' proposed TAC and discovery
10  matters. (*See* Sullivan Decl. at ¶¶3-5). After confirming that the parties were at an
11  impasse regarding the proposed amended pleading, Plaintiffs filed their Motion for
12  Leave to File the TAC, on May 26, 2023, to which Defendants filed an Opposition
13  in Response, to which Plaintiffs filed a Reply. (Dkts. 162, 168, 173; *See also* Sullivan
14  Decl. at ¶5). On June 29, 2023, the Court granted Plaintiffs leave to file the TAC.
15  (Dkt. 178). Plaintiffs filed their TAC on June 30, 2023, although it was a different
16  version than was attached to their Motion for Leave. (*Compare* Dkts. 162-3 *and*
17  179). On July 11, 2023, in compliance with this Court's orders, Defendants served
18  Plaintiffs with correspondence setting forth each disputed issue of deficiencies in
19  Plaintiffs' filed TAC in preparation for the parties' scheduled follow-up meet and
20  confer. (See Defense Counsel's Correspondence, dated July 11, 2023, attached
21  hereto as Exhibit 1; *See* also Sullivan Decl." at ¶6). On July 12, 2023, Defendants'
22  counsel again met and conferred with Plaintiffs' counsel at a videoconference for
23  twenty-five minutes regarding each disputed issue of deficiency and
24  misrepresentation in Plaintiffs' TAC, as set forth in Defendants' July 11 meet and
25  confer correspondence. (*See* Sullivan Decl. at ¶¶7, 8). Defendants again confirmed
26  that the parties were at impasse on each disputed issue regarding Plaintiffs' TAC,
27  requiring Defendants to file a Motion to Dismiss. (*See* Sullivan Decl. at ¶9).

28

Defendants' Motion to Dismiss is based on this notice, the attached memorandum of points and authorities, the pleadings on file with this Court, as well as such further oral or documentary evidence that may be presented at the hearing on the motion.

DATED:  July 18, 2023          KOLAR & ASSOCIATES

By: s/ *Jeanne L. Tollison*
JEANNE L. TOLLISON
Attorneys for Defendants
CITY OF BEVERLY HILLS, a public entity, SANDRA SPAGNOLI, DOMINICK RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER BILLY BLAIR, OFFICER JERRY WHITTAKER, and OFFICER JESSE LYGA, as employees of the City of Beverly Hills, a public entity

DATED:  July 18, 2023          SWANSON, MARTIN & BELL, LLP

By: s/ *Susan E. Sullivan*
SUSAN E. SULLIVAN
ARTHUR J. RELIFORD
ANDREW A. LOTHSON
Attorneys for Defendants
CITY OF BEVERLY HILLS, a public entity, SANDRA SPAGNOLI, DOMINICK RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER BILLY BLAIR, OFFICER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JERRY WHITTAKER, and OFFICER
JESSE LYGA, as employees of the City of
Beverly Hills, a public entity

# **TABLE OF CONTENTS**

1.  INTRODUCTION........................................................................................ 1

2.  LEGAL STANDARDS............................................................................... 2
    a.   Rule 12(b)(6) ............................................................................... 2
    b.   Rules 12(f), 12(b)(1) and 23(d)(1)(D), (c)(1)(A)....................... 2

3.  FACTS ALLEGED ..................................................................................... 3

4.  LAW AND ARGUMENT ............................................................................ 4
    a.   The TAC should be stricken because it is not what the Court
         granted leave to file......................................................................... 4
    b.   The Class and Subclass definitions are overbroad, include
         uninjured members, and have a "fail safe" problem........................... 4
    c.   Plaintiffs' claimed entitlement to class-wide relief against a
         litany of different defendants is not well-pled. ................................ 6
    d.   Plaintiffs York's and Rogers's Claims Are Time-Barred. ................. 8
    e.   Plaintiff Khalil White's Claims are Time-Barred.............................. 10
    f.   The TAC is an Improper Shotgun Pleading. ...................................... 10
    g.   Claims made against certain Individual Defendants in their
         Official and/or Individual Capacities are improper. .......................... 12
         i.    Official capacity claims should be dismissed........................ 12
         ii.   Individual capacity claims should be dismissed.................... 13
    h.   Plaintiffs' Due Process claim should be dismissed. .......................... 14
    i.   Plaintiffs' unreasonable search and seizure claims fail. ................... 15
    j.   Plaintiffs *Monell* claim should be dismissed. ................................... 16
         i.    Discriminatory policy, widespread practice or custom. ........... 17
         ii.   Deliberate indifference. ......................................................... 18
         iii.  Plaintiffs fail to adequately plead "moving force"................. 19
         iv.   Plaintiffs' failure to train allegations are factually
               deficient................................................................................. 20
    k.   Plaintiffs' Equal Protection claim fails.............................................. 21
         i.    Discriminatory purpose or intent. ........................................... 21
         ii.   Plaintiffs fail to adequately plead "discriminatory effect".......22
         iii.  Plaintiffs' alternative pleading of a "class of one"
               fails……………………………………………… .................23

l.      The request for injunctive relief should be dismissed. ........................23

5.      CONCLUSION.............................................................................................24

DECLARATION OF SUSAN E. SULLIVAN ........................................................26

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013) ...................... 8

*Adobe Sys. Inc. v. Blue Source Grp., Inc.,* No. 14-CV-02147-LHK, 2015 WL 5118509 (N.D. Cal. Aug. 31, 2015) ................................................................... 11

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ......................................................... 22

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ............................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 2, 7, 20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 2, 7

*Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008) ..................................... 5

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ............................................. 9

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................. 24

*Clark v. LG Electronics U.S.A., Inc.*, No. 13-cv-485 JM, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ...................................................................................... 2

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013) ......................................................... 8

*Connick v. Thompson*, 563 U.S. 51 (2011) ........................................................... 17

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ...................................... 9

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ............................................ 14

*Dixon v. Monterey Fin. Servs., Inc.*, No. 15-CV-03298-MMC, 2016 WL 3456680 (N.D. Cal. June 24, 2016) ................................................................................ 6

*Ebarle v. Lifelock, Inc.*, No. 15-cv-00258, 2016 WL 234364 (S.D. Cal. Jan. 20, 2016) ................................................................................................................ 5

*Figueroa v. Gates*, 120 F. Supp. 2d 917 (C.D. Cal. 2000) ................................... 13

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) .................................................. 13

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................. 2

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ........... 11

*Hafer v. Melo*, 502 U.S. 21 (1991) ....................................................................... 13

*In re iPhone Application Litig.*, 2011 No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20,) ..................................................................................... 10

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) .................................................... 10

*Kwan v. Sanmedica International*, 854 F.3d 1088 (9th Cir. 2017) .................. 19, 21

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) .................................................. 3

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..................................................... 3

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)............................. 5

*Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261 (9th Cir. 2010) ...................... 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ............................................................................................................. 5, 6

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) .................................................. 19

*Pinzon v. Jensen*, No. 1:08-CV-1543A WIGSA, 2009 WL231164 (E.D. Cal., Jan. 30, 2009) ............................................................................................................... 10

*Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432 (9th Cir. 1997) ......... 16

*Reynaga Hernandez v. Skinner*, 969 F.3d 930 (9th Cir. 2020) .............................. 15

*Ritchie v. United States*, 210 F. Supp. 2d 1120 (N.D. Cal. 2002) ...................... 8, 10

*Roy v. Contra Costa Cty.*, No. 15-cv-02672, 2016 WL 54119 (N.D. Cal. Jan. 5, 2016), aff'd, 694 F. App'x 536 (9th Cir. 2017).................................................... 20

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ...................... 6

*Sanders v. Apple Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009) ................................. 5

*Sollberger v. Wachovia Securities, LLC*, No. TACV 09-0766AGANX, 2010 WL 2674456 (C.D. Cal., June 30, 2010) .................................................................... 10

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) .................................................. 14

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).................................................... 20

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).............................................. 23

*Terry v. Ohio*, 392 U.S. 1 (1968).......................................................................... 16

*Tietsworth v. Sears, Roebuck and Co.*, 720 F.Supp.2d 1123 (N.D. Cal. 2010) ........ 2

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) ........................................... 20

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ..................................................... 17

*Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968 (9th Cir. 2002)................ 17

*United States v. Armstrong*, 517 U.S. 456 (1996)................................................. 22

*Varlitskiy v. Cnty. of Riverside, California*, No. EDCV192099JGBSPX, 2021 WL

6103516 (C.D. Cal. Oct. 22, 2021) ....................................................................4

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252
   (1977) ...........................................................................................................21

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)...................................23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).................................8

*Wayte v. United States*, 470 U.S. 598 (1985) ................................................21

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ...................................................3

*Whren v. U.S.*, 517 U.S. 806 (1995) ...............................................................16

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ...............................13

## **STATUTES**

Cal. Civ. Proc. Code § 335.1 ...........................................................................8

## **RULES**

L.R. 15-1 .....................................................................................................1, 4

Local Rule 23-2.2 ............................................................................................7

Rule 12(f) ........................................................................................................2

Rule 16(f) ....................................................................................................1, 4

Rule 23 ............................................................................................................7

## MEMORANDUM AND POINTS OF AUTHORITIES

### 1. INTRODUCTION

This is a putative class action against the Defendant City and Individual Defendants who are or were officers of its police department (the BHPD). Plaintiffs seek relief for themselves and all Black persons arrested/detained during a two-year time period between August 30, 2019 and August 30, 2021, for alleged constitutional violations. Plaintiffs' now operative TAC should be dismissed.

First and foremost, the TAC violates L.R. 15-1 and Rule 16(f), because Plaintiffs failed to file the pleading that was approved by the Court. *Compare* Dkt. 163-3 *and* Dkt. 179.  Beyond this threshold issue, several additional grounds exist to dismiss and/or strike the TAC.  Like prior iterations, the TAC contains numerous defects raised in prior motions to dismiss.  *See, e.g.*, Dkt. 97 (Motion to Dismiss the Second Amended Complaint, "SAC"). The overall class and two of three subclass definitions remain from the SAC, and should be stricken or dismissed. The TAC's class wide allegations are not well pled.  The TAC also adds two new putative class representative Plaintiffs, Rogers and York, long after their limitations periods expired. The TAC improperly attempts to add Khalil White back into the case as a plaintiff, but his claims are also time-barred. That Plaintiffs have "shotgun" pleaded their claims also warrants dismissal. Certain defendants should be dismissed from "official" and "individual" capacity claims. Grounds also exist to dismiss each remaining claim, because the alleged due process violations, unreasonable search and seizures, *Monell* claim, equal protection violations, and the request for injunctive relief all fail at the pleadings stage.

For the reasons discussed below, Defendants' motion to dismiss/strike should be granted.

1

## 2. <u>LEGAL STANDARDS</u>

2

### a. <u>Rule 12(b)(6)</u>

3       A plaintiff is required to state, "enough facts to state a claim to relief that is

4   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5   "[F]acial plausibility" requires pleaded facts that "allow[] the court to draw the

6   reasonable inference that the defendant is liable for the misconduct alleged."

7   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the Court must accept all well-

8   pleaded factual allegations as true but "[t]hreadbare recitals of the elements of a

9   cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

10  556 U.S. at 678. Second, assuming the veracity of well-pleaded factual allegations,

11  the Court must "determine whether they plausibly give rise to an entitlement to

12  relief." *Id*. at 679. This determination is context-specific, requiring the Court to draw

13  on its experience and common sense, but there is no plausibility "where the well-

14  pleaded facts do not permit the court to infer more than the mere possibility of

15  misconduct." *Id*. Courts need not "accept as true a legal conclusion couched as a

16  factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

17

### b. <u>Rules 12(f), 12(b)(1) and 23(d)(1)(D), (c)(1)(A)</u>

18      Under Rule 12(f), courts can "strike class allegations if it is clear from the

19  complaint that the class claims cannot be maintained." *Clark v. LG Electronics*

20  *U.S.A., Inc.*, No. 13-cv-485 JM, 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013);

21  *see also Tietsworth v. Sears, Roebuck and Co*., 720 F.Supp.2d 1123, 1146 (N.D. Cal.

22  2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f),

23  this Court has authority to strike class allegations prior to discovery if the complaint

24  demonstrates that a class action cannot be maintained."). "Sometimes the issues are

25  plain enough from the pleadings" to determine that a case should not proceed as a

26  class action. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

27      Finally, standing is a prerequisite to justiciability and "an essential and

28  unchanging part of the case-or-controversy requirement of Article III." *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing challenges are subject to review under Rule 12(b)(1), *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) and are resolved under Rule 12(b)(6)'s sufficiency standard. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### 3. <u>FACTS ALLEGED</u>

The TAC's allegations with respect to the putative class representative Plaintiffs are brief and vague. (TAC, ¶¶25-30, 97-100). On August 5, 2020 (Plaintiffs Nett and Swift) and on September 7, 2020 (Plaintiffs White and Williams) were unlawfully detained by Defendant Officers. (TAC, ¶¶97-100). Rogers was detained in "August 2020" without alleging a specific date. (TAC, ¶29). The TAC omits a specific date for York's alleged detention. (TAC, ¶30). None of the Plaintiffs specifically identify which officers detained them, or how any particular Individual Defendant officer was personally involved in their alleged incidents or claims. Rather, they claim Defendants Drummond, Ilusorio and Cruz "were working as members of the RDT" "[o]n or about August 5 and September 7, 2020, and on other dates" and "detained plaintiffs" and arrested them. (TAC, ¶100).

Nett and Swift allege they were unlawfully stopped because their vehicle was over the limit line, that they were handcuffed and detained, and that Nett was held for 72 hours in jail before being released. (TAC, ¶97). Although the TAC contains boilerplate allegations as to Nett and Swift being "arrested" or "prosecuted" or "charged", it also pleads that neither Nett nor Swift were charged with crimes. *Id*. Nett and Swift have broadly alleged that "defendants" detained them. (TAC, ¶¶97, 98, 100).

Williams and White allege they were unlawfully stopped while riding scooters, not violating any laws, and then falsely arrested, jailed, and maliciously prosecuted, and that charges were dismissed. (TAC, ¶99). White and Williams have also broadly alleged that "defendants" detained them. (TAC, ¶¶99, 100).

Plaintiff Rogers alleges that he was racially profiled while driving, pulled

over, detained, handcuffed, and arrested for EDD fraud, and that he was never prosecuted. (TAC, ¶29). Plaintiff York alleges that he was stopped while driving, detained, searched, and jailed for one night, and never convicted. (TAC, ¶30).

**4. LAW AND ARGUMENT**

    **a. The TAC should be stricken because it is not what the Court granted leave to file.**

"Under L.R. 15-1, when a party obtains leave of Court to file an amended pleading, the party must '**file the pleading approved by the Court** ...'" *Varlitskiy v. Cnty. of Riverside, California*, No. EDCV192099JGBSPX, 2021 WL 6103516, at *2 (C.D. Cal. Oct. 22, 2021) (emphasis in original). The TAC violates this rule.

On May 28, 2023, Plaintiffs filed a motion for leave to file a TAC. (Dkt. 163). The proposed TAC attached to Plaintiffs' motion for leave (Dkt. 162-3) is <u>not</u> the same TAC filed on June 30, 2023 (Dkt. 179). The filed TAC names a different party plaintiff: it changes "Juwan White" to "Khalil White" and the case's caption; and it changes the allegations throughout to reflect Juwan and not Khalil—all without leave from the Court. In addition to violating L.R. 15-1, this violates the Court's order. *See* Fed. R. Civ. P. 16(f). The time to amend the pleadings expired prior to Plaintiffs' improper attempt to change the identity of one of the Plaintiffs, and the so-called "Errata" (Dkt. 180) should also be stricken. Indeed, adding Khalil White back into the case, now, is untimely as his two-year statute of limitations ran long ago.[1]  The TAC must be stricken.

    **b. The Class and Subclass definitions are overbroad, include**

---

[1] While the Original Complaint (Dkt. 1-1) was filed on behalf of Khalil (and not Juwan), both the FAC (Dkt. 25) and SAC (Dkt. 43) were filed on behalf of "Juwan" White, which appears to be a violation of Rules 10 and 17(a)(1). Juwan White is Khalil's brother, and Khalil provided his brother's name as an alias at the time of his own arrest.

**uninjured members, and have a "fail safe" problem.**

Plaintiffs' proffered class definitions do not pass scrutiny. A proper class definition cannot be overbroad, include uninjured members, or be "fail safe." Plaintiffs' class definitions do not meet these requirements: "All Black people who were detained or arrested by the [BHPD] from August 30, 2019 through August 30, 2021 without being convicted of any crime." (TAC, ¶2.) In addition to race – here, "All Black people" – the criteria for class entry is being "detained or arrested . . . without being convicted of any crime."

First, this definition "includes members who are not entitled to recovery[,]" *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258, 2016 WL 234364, at *5 (S.D. Cal. Jan. 20, 2016)—because mere detention or arrest even without a conviction is not, in itself, a constitutional injury. Stated differently, such instances of interaction between law enforcement and citizens can be and almost always are constitutionally appropriate, *i.e.*, legal. Inclusion of members in a class who have not suffered a *redressable* injury is not permissible. Some courts view this as an Article III standing problem. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 991 (N.D. Cal. 2009) (striking class allegations regarding iMac owners which would include members without standing). Other courts reject class definitions that include uninjured members without Article III standing as "overbroad." *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (holding the class definition was overbroad because many purported members were not injured; "class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading"), overruled on other grounds, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022) (en banc).

Second, the class definition runs head on into the mini-trial and "fail safe" conundrum. *Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008), illustrates the point. In *Brazil*, the proposed class was defined as "all persons or entities" who

"purchased Dell computer products" that "Dell falsely advertised as discounted." *Id*. at 1167. The court granted defendant's motion to strike because to "determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that Dell had falsely advertised" in the first place. *Id*. Here, because class membership hinges on a determination of whether each individual was actually "detained or arrested" and then whether they were ultimately "convicted of any crime" or not, a series of mini-trials on each putative member's outcome is required for entry to the class. These are not manageable determinations to be made by a "Claims Administrator" (*see* TAC, ¶19) after certification. Rather, these are threshold liability determinations inside the class definition—that is, a "fail safe" definition.

The TAC's subclasses fair no better. (TAC, ¶4a-b.) Imbedded in both definitions are liability determinations of (a) whether convictions after arrest occurred and (b) how or if members pled to the charge. That is not proper. *See, e.g.*, *Dixon v. Monterey Fin. Servs., Inc*., No. 15-CV-03298-MMC, 2016 WL 3456680, at \*4 (N.D. Cal. June 24, 2016) (striking "fail safe" class definition because inclusion into the class requires a determination of whether the defendant is actually liable); *Olean Wholesale Grocery Coop.*, 31 F.4th at 670 n.14 ("A court may not ... create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct."); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (class cannot be defined "to preclude membership unless the liability of the defendant is established").    The TAC's class definitions should be stricken.

### c.  Plaintiffs' claimed entitlement to class-wide relief against a litany of different defendants is not well-pled.

A "class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010)). The TAC's "Class

Allegations" (¶¶2-15) and "Compliance with Federal Rule 23" (¶¶16-24) offer nothing to show how a class action can be maintained against a litany of defendants. If anything, the sparse statements in these paragraphs that go beyond merely parroting Rule 23 and Local Rule 23-2.2 elements only serve to underscore the type of case-by-case, individual assessments that exist here, starting from before the arrest, the arrest and detention, and then following thereafter.

Generically lumping together different events over the course of multiple years and different law enforcement officers acting under different circumstances is not a plausible recipe for a proper class action. Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If an allegation is so general that it encompasses a wide swath of conduct, much of it innocent, then a plaintiff has "not nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Here, Plaintiffs' "facts" to support class treatment amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Other threshold problems exist with attempting to make this a class action. Most of the Individual Defendants were added for the first time in the SAC filed on April 21, 2022, and are part of the TAC—they are, Individual Defendants Spagnoli, Rivetti, Drummond, Ilusorio, De La Cruz, Fair, Krug, Blair, Whittaker, and Lyga. This creates obvious timeliness and over-breath problems. For example, Plaintiffs plead that Spagnoli's employment ended in May 2020 (TAC, ¶85), more than one (1) year before the primary class period ends. May 2020 is also before either of the proposed subclasses begin on August 29, 2020 (TAC, ¶4a and b). By waiting to sue Individual Defendants until April 21, 2022, Plaintiffs' proposed class definition's time-period starts after expiration of the two (2) year statute of limitations—i.e., the class starts on August 30, 2019, but the Individual Defendants cannot be sued for

1  acts before April 21, 2020.[2]

2      Plaintiffs' TAC includes an affirmative allegation that should eviscerate class-

3  wide treatment of their claims, even against the Defendant City: They claim

4  entitlement for Equal Protection violations because they are asserting "class of one"

5  claims. (TAC, ¶170). This allegation is the antithesis of a class action, which is, after

6  all, a procedural mechanism whereby the "usual rule that litigation be conducted by

7  and on behalf of the named parties only" is swept aside so that multiple parties can

8  pursue common redress. *See Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013)

9  (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011))*; Abdullah v.*

10  *U.S. Sec. Associates, Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013).  Here, Plaintiffs'

11  attempt to turn their individual claims into a class action should be rejected and

12  Paragraphs 2-24 should be either dismissed or stricken.

13          **d.  Plaintiffs York's and Rogers's Claims Are Time-Barred.**

14      Newly added Plaintiffs Rogers's and York' claims are time-barred. *See*

15  *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002) (granting

16  dismissal based on statute of limitations). California's 2-year statute of limitations

17  for personal-injury actions controls for section 1983 actions. Cal. Civ. Proc. Code §

18  335.1; *Jones*, 393 F.3d at 927. Here, Plaintiff Rogers's incident allegedly occurred

19  in August 2020. (TAC at ¶29). The TAC omits the year of York's incident, *see* TAC

20  at ¶30, although it occurred in November 2019, *see* Dkt. 168-1 at 2, which, in any

21  event, post-dates the start of the class period in August 2019, *see* TAC at ¶2. Filing

22

23

24  ---

[2] "Statutes of limitations are not legalistic gimmicks but embody the experience of

25  Anglo–American law that it is sound public policy to set a specific time within which

    a given legal action may be brought." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir.

26  2004). California's statute of limitations for personal-injury actions controls the

    statute of limitations for section 1983 actions. *Id.* at 927. In California, the statute of

27  limitations for personal-injury lawsuits is 2 years. Cal. Civ. Proc. Code § 335.1;

28  *Jackson v. Barnes*, 749 F.3d 755, 761 (9th Cir. 2014).

suit in June 2023 is untimely.

Moreover, Rogers and York have omitted facts to support entitlement to equitable tolling. The Supreme Court has explained:

> We conclude, as did the Court in American Pipe, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S., at 554, 94 S.Ct., at 766. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). Plaintiffs have not pled that certification has been denied. Thus, they have not pled the "point" in time wherein tolling for individual claims becomes available.

Plaintiffs cannot delay until after the statute of limitations to file suit as a putative class representative. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.2 (2018) (explaining that American Pipe tolling is limited to individual claims: "American Pipe tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial. If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, only then would it be necessary to pursue claims individually.").

The TAC is insufficient to plead equitable tolling for another, related reason. It is silent as to Rogers's and York's diligence in pursuing claims. But "to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims." *China Agritech*, 138 S. Ct. at 1808. "A would-be class representative who commences suit after expiration of the limitation period [ ] can hardly qualify as diligent in asserting claims and pursuing relief. Her interest in

representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suit." *Id.* Rogers's and York's untimely claims should be dismissed from this putative class action.

### e.  **Plaintiff Khalil White's Claims are Time-Barred.**

Plaintiff Khalil White's claims are also time-barred. *See Ritchie*, 210 F. Supp. 2d at 1123. Khalil White has attempted to revive his claims after abandoning them when the matter was removed to federal court; he was not named as a party Plaintiffs in either the First or Second Amended Complaints. (Dkts. 25, 43). The filing of these complaints superseded the Original Complaint. (Dkt. 1-1). Khalil's incident on September 7, 2020, is more than 2 years before the TAC was filed. Nor has he pled any facts to support equitable tolling. Thus, his previously abandoned, and now untimely, claims should be dismissed in their entirety.

### f.     **The TAC is an Improper Shotgun Pleading.**

Each Individual Defendant can be liable only for his or her own actions. *Jones v. Williams*, 297 F.3d 930, 934-935 (9th Cir. 2002). It is a plaintiff's burden to separately identify claims, state facts to support each claim, and state how each defendant relates to each claim. *Pinzon v. Jensen*, No. 1:08-CV-1543A WIGSA, 2009 WL231164, at *2 (E.D. Cal., Jan. 30, 2009). Generalized allegations against defendants will not do. *In re iPhone Application Litig.*, 2011 No. 11-MD-02250-LHK, 2011 WL 4403963, at *3 (N.D. Cal. Sept. 20,). The TAC does not comply.

"The Court has recognized that allowing shotgun pleadings would lead to many negative consequences." *Sollberger v. Wachovia Securities, LLC*, No. TACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal., June 30, 2010). This commonly occurs with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. Another example is where the plaintiff recites a collection of general allegations in the beginning of the complaint, and then "each count incorporates every antecedent allegation by

reference." *Id*. This shotgun pleading style deprives defendants of knowing exactly what they are accused of doing wrong. *Id*. at *5.

When a pleading fails "to allege what role each Defendant played in the alleged harm," this "makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Adobe Sys. Inc. v. Blue Source Grp., Inc.,* No. 14-CV-02147-LHK, 2015 WL 5118509, at *10 (N.D. Cal. Aug. 31, 2015) (citation omitted). A complaint that "lump[s] together ... multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (citation omitted).

Here, Plaintiffs lump Defendants, and often themselves, together as one "group" and make no effort to specify the roles each Individual Defendant played as to each Plaintiff's claims. (TAC, ¶¶97-100). Examples are rampant. Plaintiffs allege Drummond, Ilusorio, De La Cruz, Fair, Krug, Blair, Whittaker and Lyga "were involved in the detention and arrest of the Plaintiffs" but do not identify which of these defendants harmed which Plaintiff. (TAC, ¶95). Plaintiffs Nett and Swift assert that "defendants" pulled them over. (TAC, ¶97). Nett and Swift assert they were detained, falsely arrested, grabbed, handcuffed, and/or jailed "by the defendants." (TAC, ¶98). Plaintiffs White and Williams assert they were detained, falsely arrested, subjected to excessive force, grabbed and threatened with being tased, handcuffed, jailed and maliciously prosecuted with false charges—without identifying which defendant did so. (TAC, ¶99). Plaintiffs allege that Drummond, Ilusorio and De La Cruz "detained plaintiffs" without matching themselves to any particular defendant. (TAC, ¶100). Plaintiffs allege that "[o]n information and belief" Nett, Swift, Rogers and York were detained but stop short of who specifically did so. (TAC, ¶112). All six Plaintiffs allege that they were all wrongfully seized and searched by "Defendants" without identifying who of the defendants was personally involved in each of their claims. (TAC, ¶128).

Plaintiffs' shotgun pleading should be dismissed.

> **g. <u>Claims made against certain Individual Defendants in their Official and/or Individual Capacities are improper.</u>**

> **i.   Official capacity claims should be dismissed.**

"Official capacity" claims as to Individual Defendants Ilusorio, De La Cruz, Krug, Blair, Whittaker and Lyga should be dismissed, as none were "office holders" much less policy makers or managerial or supervisory level employees of the BHPD. (TAC, ¶¶36-41, 44, 95). Ilusorio, De La Cruz, Krug, Blair, Whittaker and Lyga are alleged to be simply members of the RDT who were "subordinates". (TAC, ¶44, 95). No plausible claims regarding actions taken pursuant to "official capacity" against Defendants Ilusorio, De La Cruz, Krug, Blair, Whittaker, or Lyga have been alleged and must be dismissed.

Plaintiffs also have no basis for maintaining an action against Spagnoli, Rivetti, Dowling, Drummond, or Fair for official capacities. Per the TAC, Spagnoli was the BHPD Chief and final policy maker from March 2016 until May 2020, and Rivetti was the BHPD Interim Chief and final policy maker from May 2020 to November 2021. (TAC, ¶¶36-37, 39, 69, 85). Plaintiffs allege only conclusory allegations regarding the non-office holders, Captain Dowling, and Sergeants Drummond and Fair, supported by boilerplate language that "final-policy making authority" was "delegated" to them without any facts to support such conclusory statements. (TAC, ¶¶40, 41). But Plaintiffs concede that Drummond and Fair were "subordinates" in the BHPD and "following orders". (TAC, ¶95).

The TAC makes clear that Spagnoli was no longer employed as of May 15, 2020, months before the RDT was formed in August 2020, before the incidents concerning any Plaintiffs alleging a timely claim. (TAC, ¶¶5, 29, 85, 97-10). Per the TAC, Rivetti and Dowling are no longer employed by the BHPD; they are "former" employees and that Dowling "retired". (TAC, ¶¶6, 62). It is also undisputed that Dowling, Drummond and Fair are not, and were never, office holders in the BHPD,

1    and that none ever held a position to be "final policy makers" of the BHPD.

2          Plaintiffs' conclusory allegations of "delegation" of policy-making authority"

3    to Dowling, Drummond or Fair, with no facts to support such allegations, fails to

4    state a plausible "official capacity" claim against any of them.   The same goes for

5    "official capacity" claims with respect to the former Chief Spagnoli and Interim

6    Chief Rivetti, or retired non-officer holder Captain Dowling, none of whom are

7    current employees or officials sued in their official capacity or persons for purposes

8    of § 1983.   *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24

9    (1997); *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Mich. Dep't of State Police*,

10   491 U.S. 58, 71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). A

11   suit against an employee in his/her "official capacity" is a suit against the entity.

12   *See Hafer*, 502 U.S. at 25. "[W]here an official is replaced in the period preceding

13   suit or during the pendency of the suit, it is appropriate to substitute the name of the

14   replacement in place of the prior official, only with regard to the official-capacity

15   basis for suit." *See Figueroa v. Gates*, 120 F. Supp. 2d 917, 920 (C.D. Cal. 2000).

16                    **ii. Individual capacity claims should be dismissed.**

17         The "individual capacity" claims against Spagnoli, Rivetti, and Dowling are

18   not supported by sufficient facts, as none are alleged to be personally involved in

19   any of the alleged detentions, arrests, charges, or court proceedings of any of the

20   Plaintiffs. (TAC, ¶¶29, 30, 97-100). Plaintiffs lump them in with all "Defendants"

21   in a shotgun style pleading, and stated that Spagnoli, Rivetti, and Dowling "set in

22   motion a series of acts by their subordinates, or knowingly refused to terminate a

23   series of acts by their subordinates, that each knew or reasonably should have known

24   would cause the subordinates to deprive Black Americans of their rights under law."

25   (TAC, ¶94). But Spagnoli was no longer an employee when the RDT was formed or

26   when Plaintiffs with timely claims incidents occurred—hence, she did not partake

27   in detentions, arrests, handcuffings, or prosecutions. (TAC, ¶¶ 85).

28

### h.  **Plaintiffs' Due Process claim should be dismissed.**

Plaintiffs' claim against the Individual Defendants for violation of their procedural and substantive due process rights is factually deficient. "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). As held in *Deveraux*, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Id.* at 1074-75; *see also Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) ("The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official."). Following *Deveraux*, the Ninth Circuit has stated that,

> [t]o prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question.

*Spencer*, 857 F.3d at 798 (citation omitted).

The elements necessary to sufficiently plead a due process claim are not met simply by alleging the elements of common law malicious prosecution and/or false imprisonment claims, as Plaintiffs try to do here. Plaintiffs have failed to properly allege the basic elements of a federal due process claim, which requires dismissal.

The TAC's allegations fail to establish the necessary elements of that claim for any Plaintiff. While Nett and Swift allege that on August 5, 2020, they were unlawfully stopped, handcuffed, and detained, and that Nett was held for 72 hours

in jail, they specifically admit that neither was charged with any crime. (TAC, ¶¶97, 98, 100). That a plaintiff was "subjected to criminal charges" is a necessary element of a due process claim. *Devereaux*, 263 F.3d at 1074-75.

As to Williams and White, they allege they were falsely arrested, jailed, and maliciously prosecuted, but that all charges against them were dismissed. (TAC, ¶¶99, 100). They only plead officers "fabricated charges" against them in support of their due process claim. (TAC, ¶¶93, 103). These allegations are insufficient. Williams and White fail to allege facts to show that their claimed injury would not have occurred in the absence of the conduct, or that the alleged misconduct was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question. *Spencer*, 857 F.3d at 798.

Similarly, Rogers alleges that no court proceedings occurred and he was not prosecuted. (TAC, ¶29). York makes no specific allegations at all regarding the charges leading to his arrest or court proceedings, only that he was never convicted. (TAC, ¶30). The Due Process claims must all be dismissed.

Finally, even if Plaintiffs' scant allegations supported any of the Plaintiffs' due process claims, none allege with any specificity which Individual Defendants were personally involved in the alleged misconduct against them. (TAC, ¶¶29, 30, 97-100). Personal involvement must be alleged against an individual defendant. *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941-42 (9th Cir. 2020) (a minimum level of involvement is needed for § 1983 liability under the integral-participant doctrine. The official must be more than a mere bystander). Therefore, Plaintiffs' alleged due process claims against all Defendants should be dismissed.

### i. **Plaintiffs' unreasonable search and seizure claims fail.**

To allege an unlawful search and seizure claim, Plaintiffs need to allege that they were detained without reasonable suspicion and/or that there was a custodial arrest of their person without probable cause. *Terry v. Ohio*, 392 U.S. 1, 19-22

1   (1968); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006); *Whren v. U.S.*, 517 U.S.

2   806, 810 (1995).

3         Williams and White allege they were not violating any laws when they were

4   stopped and detained by officers Drummond, Ilusorio, and De La Cruz. (TAC, ¶99).

5   Nett and Swift allege that they were unlawfully stopped based on the pretext that

6   their vehicle was over the limit line. (TAC, ¶97). Rogers and York both allege that

7   they were stopped while driving after being racially profiled, while York adds that

8   he did nothing wrong. (TAC, ¶¶29, 3). While these allegations arguably allege an

9   unreasonable seizure claim generally, the issue is whether Plaintiffs have adequately

10  alleged such claim against each Individual Defendants. They have not.

11        Here, Plaintiffs conclusorily allege "upon information and belief" that

12  Drummond, Ilusorio, De La Cruz, Fair, Krug, Blair, Whittaker, and Lyga were

13  "involved" in their detentions. (TAC, ¶95). Notably, Plaintiffs do not state that all

14  eight of these Individual Defendants searched and seized each Plaintiff. While

15  Plaintiffs make a vague allegation that Defendants Drummond, Ilusorio, and De La

16  Cruz, were working on or about August 5 and September 7, 2000 (the dates of Nett's,

17  Swift's, White's, and Williams's occurrences), Plaintiff again only conclusorily

18  allege these officers detained "plaintiffs" without identifying who or how any

19  Individual Defendant did so. (TAC, ¶100).

20        Plaintiffs' second claim should be dismissed.

21        **j.   Plaintiffs' *Monell* claim should be dismissed.**

22        To state a claim of municipal liability, Plaintiffs must allege "(1) that [they]

23  possessed a constitutional right of which [they were] deprived; (2) that the

24  municipality had a policy; (3) that this policy amounts to deliberate indifference to

25  [their] constitutional right; and, (4) that the policy is the moving force behind the

26  constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432,

27  438 (9th Cir. 1997) (internal quotation marks and citation omitted). A municipality

28  may not be held vicariously liable for the unconstitutional acts of its employees

under a theory of respondeat superior. *Monell*, 436 U.S. at 691; *v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

In addition, a plaintiff can try to show that the municipality's inaction through the failure to adequately train, supervise, or discipline employees, amounts to the municipality's official policy, which requires showing that the inaction reflects a "'deliberate indifference to the rights of persons with whom the [municipality's employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Canton v. Harris*, 489 U.S. at 388).

Plaintiffs' TAC fails to adequately plead facts sufficient for a *Monell* claim.

### i. Discriminatory policy, widespread practice or custom.

The Ninth Circuit has held Plaintiffs may establish the second prong of *Monell*, the existence of an affirmative policy or practice, in one of three ways: first, that the constitutional violation was the result of a governmental policy or a longstanding practice or custom; second, that the individual who committed the constitutional violation was an official with final policy-making authority "whose edicts or acts may fairly be said to represent official policy;" or, third, that an official with final policy-making authority either delegated that authority to, or ratified the decision of, a subordinate. *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002) (internal quotations and citations omitted); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Thus, *Monell* requires pleading sufficient facts that either a governmental policy or a longstanding practice or custom, or otherwise that the individual who committed the constitutional violation was an official with final policy-making authority. *Ulrich*, 308 F.3d at 985.

Plaintiffs' allegations regarding the existence of an official written policy, i.e., the RDT policy, are not plausible. The TAC is devoid of facts that allege that the written RDT plan contains anything other than the BHPD race-neutral policies to enforce laws in the City to reduce crime. In fact, Plaintiffs have removed that RDT

plan from the TAC's exhibits after attaching it to SAC because of the race-neutral language in the plan. (Dkt. 43, at Exs. 3, 5). Plaintiffs fails to cite a written BHPD policy that even remotely suggests that persons of a certain race are to be targeted, rather they offer only conclusory statements that the polices of the BHPD are discriminatory. (TAC, ¶¶146-148, 153). Thus, Plaintiffs' claim the City's has any written discriminatory policies is not plausibly plead.

Further, Plaintiffs' allegations that alleged final policy-makers Spagnoli and Rivetti issued discriminatory policies or ratified the decisions of subordinates Dowling and other officers to violate Plaintiffs' constitutional rights are also conclusory. (TAC, ¶¶149-153). There are not sufficiently plead non-conclusory facts that any of the alleged final policy-makers issued policies, written or otherwise, or were aware of the facts and circumstances surrounding any of the arrests made by any of the Individual Defendants. *Id*. Finally, Plaintiffs' allegations regarding "widespread practices and customs" are conclusory and the alleged facts in support are often irrelevant. (TAC, ¶¶64-82, 154-164). Plaintiffs fail to plead sufficient facts supported by reference to any actual judicial findings or final adjudications that the City's employees committed constitutional violations or engaged in any wrongdoing. *Id*.

### ii.  Deliberate indifference.

As to the third *Monell* prong, Courts have stated that "[t]he 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Castro*, 833 F.3d at 1075 (9th Cir. 2016) (quoting *City of Canton*, 489 U.S. at 385). "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [the jail's] inhabitants.'" *Castro*, 833 F.3d at 1076 (citation omitted). To show deliberate indifference, Plaintiffs must show that

"the need for different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (citation omitted).

Plaintiffs fail to satisfy the third *Monell* prong, because they do not sufficiently plead facts to show deliberate indifference to Plaintiffs' constitutional rights. Plaintiffs simply repeat ad nauseam and in a conclusory fashion their allegation that the City was "deliberately indifferent" and that officials with final policy-making authority were aware of the alleged constitutional violations but failed to act. (TAC, ¶¶157-161). These allegations do not demonstrate a direct causal link between the alleged written policy or alleged "widespread practices and customs" and the alleged constitutional violations. *Id.* The facts, which include alleged employment disputes and discriminatory conduct amongst employees, are wholly irrelevant. They have nothing to do with the treatment of Plaintiffs or Black Americans walking in, driving though, or otherwise visiting to the City. They do not support Plaintiffs' allegations that the City had policies, practices, or customs that caused the alleged violations of Plaintiffs' constitutional rights, or resulted in any deliberate indifference to those constitutional rights.

### iii.  Plaintiffs fail to adequately plead "moving force".

Plaintiffs also fail to satisfy the fourth *Monell* prong because they cannot plausibly allege that the any City written policy or its alleged "widespread practices and customs" were the "moving force" behind the alleged constitutional deprivations. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Kwan v. Sanmedica International*, 854 F.3d 1088, 1096 (9th Cir. 2017). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Again, the TAC fails to allege that there is any BHPD written policy that contains anything other than race-neutral language, other than to recite boilerplate conclusions. (TAC, ¶¶59, 69, 73, 134). Aside from conclusions, Plaintiffs offer no specific factual detail showing how the alleged written BHPD policies and RDT plan, or the alleged "practices and customs" of the BHPD were the "moving force" behind any alleged constitutional violations.

### iv.  Plaintiffs' failure to train allegations are factually deficient.

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. *City of Canton*, 489 U.S. at 388. Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa Cty.*, No. 15-cv-02672, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016), aff'd, 694 F. App'x 536 (9th Cir. 2017) (finding that the plaintiff had "not alleged anything that suggests a link to any City or County policy to arrest individuals without probable cause or to violate their constitutional rights while in custody, or failure to have a policy to train employees with respect to such rights"). Further, the alleged inadequacy of training cannot serve as a basis for governmental liability unless it "amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton*, 489 U.S. at 388. Liability cannot be established simply by showing that an injury could have been avoided if a public employee had better or more training. *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).

As discussed above, Plaintiffs' fail to adequately allege "deliberate indifference." Also, there are no non-conclusory facts alleged to assert that the City had a constitutionally deficient training program. (TAC, ¶¶14, 58, 154, 160-162).

1   Plaintiffs only allege that training was deliberately indifferent in a few instances

2   without any specific facts to support a plausible claim. Thus, Plaintiffs' *Monell* claim

3   should be dismissed in its entirety.

4               **k. Plaintiffs' Equal Protection claim fails.**

5                   **i. Discriminatory purpose or intent.**

6        Plaintiffs must prove "both that the ... system had a discriminatory effect and

7   that it was motivated by a discriminatory purpose" or intent. *Wayte v. United States*,

8   470 U.S. 598, 608 (1985); *see also Village of Arlington Heights v. Metropolitan*

9   *Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977) ("[O]fficial action will not be

10  held unconstitutional solely because it results in a racially disproportionate

11  impact.").

12       Discriminatory purpose must be "a motivating factor" of the policy or

13  widespread customs or practices. *Arlington Heights*, 429 U.S. at 266. And in

14  pleading both discriminatory effect and purpose, Plaintiffs must offer more than

15  labels and conclusions, or a formulaic recitation of the elements. *Iqbal,* 556 U.S. at

16  678 (internal citations omitted); *see also Kwan*, 854 F.3d at 1096. Plaintiffs allege

17  that Black Americans were racially profiled and regularly stopped/harassed for

18  engaging in innocent conduct and treated "differently than any other racial group."

19  (TAC, ¶¶169, 174, 185, 186). Plaintiffs' claims are too speculative and insufficient,

20  especially when there are more plausible causes or explanations for the officers'

21  alleged conduct, particularly in light of the fact that Plaintiffs have failed to plausibly

22  allege in a non-conclusory fashion any policies, practices or customs that were not

23  race neutral.

24       Plaintiffs' discriminatory intent claims must likewise fail where, as here,

25  "more likely explanations" exist. *Iqbal*, 556 U.S. at 681. In *Iqbal*, the Court noted

26  that the September 11 attacks were perpetrated by Arab Muslims at the direction of

27  an Arab Muslim whose followers were largely other Arab Muslims. *Id*. at 682.

28  Accordingly, it was "no surprise" (and not an indicia of discriminatory intent) "that

a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id*. Similarly, here, the officers' alleged conduct was just as plausibly an attempt to legally enforce the law in making stops and effectuating arrests.

### ii.  Plaintiffs fail to adequately plead "discriminatory effect".

To prove discriminatory effect, Plaintiffs must allege sufficient facts to show that they were treated differently than similarly situated members of another class due to Plaintiffs' membership in the protected class. *United States v. Armstrong*, 517 U.S. 456, 468-469 (1996). The Supreme Court has specifically rejected claims where a plaintiff fails to satisfy the similarly situated requirement explaining that the "required threshold" for equal protection claims is "a **credible** showing of different treatment of similarly situated persons." *Id*. at 470. (emphasis added). Likewise, Title VI authorizes a private right of action only in cases involving intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

Here, Plaintiffs attempt to allege a discriminatory effect by claiming that a disproportionate percentage of Black Americans were detained. (TAC, ¶¶11, 14, 62). Plaintiff allege that, with respect to the RDT and EDD subclasses, 90% of task force arrestees were Black whereas only 1.9% population of the City is Black and under 6% of the population of the State of California is Black without regard to or any alleged facts as to the racial percentages of persons shopping, walking, driving, or otherwise present on Rodeo Drive during business hours.[3] (TAC, ¶176).  Plaintiffs

---

[3] Plaintiffs' allegations regarding the alleged "task forces" and alleged number of persons in the two sub-class contains miscalculations. During the time that the RDT was deployed, there were approximately 107 arrests for EDD fraud, most of which were made by the RDT. (TAC, Ex. 1). *Id*. Most of the alleged 99 Black Americans arrested for EDD fraud from August 29 through October 25, 2020, are included in the group of 80 Black Americans arrested by the RDT from August 29 through

also allege that the class size of Black American arrested by the BHPD and not convicted of any crime during the alleged time period is approximately 1,088 persons out of a total of approximately 3,213 person arrested. (TAC, ¶180). This allegation is based upon mere conjuncture. Plaintiffs further allege in conclusory fashion that none of the 1,088 was ever convicted of any crime. *Id*. The conclusory and unsupported allegations regarding the outcome of the 1,088 arrest, as well as the conclusory allegations regarding the subclasses, do not sufficiently establish statistics that would support a claim for an equal protection violation or of "racial profiling" of Plaintiffs or any alleged putative class members.

### iii. Plaintiffs' alternative pleading of a "class of one" fails.

To adequately plead the alternative "class of one" theory, Plaintiffs must include facts showing there was no rational basis for the alleged violation and that the identifiable group that was discriminated against consisted solely of the plaintiff. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-565 (2000). The facts pled in the TAC unquestionably base Plaintiffs' Equal Protection claim on a theory of discriminatory intent against multiple plaintiffs, not a "class of one" theory as conclusory pled. (TAC, ¶170). Plaintiffs' alternative pleading of a "class of one" is contrary to their factual allegations and of a putative class, and thus, fails.

### l. __The request for injunctive relief should be dismissed.__

A plaintiff seeking equitable relief does not have standing unless he is "under threat of suffering 'injury in fact' that is concrete and particularized." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[T]he threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* Here, Plaintiffs do not meet this threshold. Although Plaintiffs claim past constitutional violations from August 30,

---

October 25, 2020. *Id.*

2019 through August 30, 2021, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation and citation omitted). Instead, "standing to seek the injunction requested depended on whether he was likely to suffer **future** injury … by police officers." *Id.* at 105 (emphasis added). Plaintiffs' conclusory allegations of possible future harm are conclusory. (TAC, ¶186). Plaintiffs' request for injunctive relief should be dismissed.

## 5. **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court grant their Motion to Dismiss in its entirety.


DATED:  July 18, 2023                    KOLAR & ASSOCIATES


                                         By: s/ *Jeanne L. Tollison*
                                         JEANNE L. TOLLISON
                                         Attorneys for Defendants
                                         CITY OF BEVERLY HILLS, a public entity,
                                         SANDRA SPAGNOLI, DOMINICK RIVETTI,
                                         CAPTAIN SCOTT DOWLING, SERGEANT
                                         DALE DRUMMOND, OFFICER JON
                                         ILUSORIO, OFFICER JONATHAN DE LA
                                         CRUZ, SGT. BILLY FAIR, OFFICER JAMES
                                         KRUG, OFFICER BILLY BLAIR, OFFICER
                                         JERRY WHITTAKER, and OFFICER JESSE
                                         LYGA, as employees of the City of Beverly
                                         Hills, a public entity


DATED:  July 18, 2023                    SWANSON, MARTIN & BELL, LLP


                                         By: s/ *Susan E. Sullivan*
                                         SUSAN E. SULLIVAN
                                         ARTHUR J. RELIFORD
                                         ANDREW A. LOTHSON
                                         Attorneys for Defendants CITY OF BEVERLY
                                         HILLS, a public entity, SANDRA SPAGNOLI,
                                         DOMINICK RIVETTI, CAPTAIN SCOTT

DOWLING, SERGEANT DALE
DRUMMOND, OFFICER JON ILUSORIO,
OFFICER JONATHAN DE LA CRUZ, SGT.
BILLY FAIR, OFFICER JAMES KRUG,
OFFICER BILLY BLAIR, OFFICER JERRY
WHITTAKER, and OFFICER JESSE LYGA,
as employees of the City of Beverly Hills, a
public entity

## DECLARATION OF SUSAN E. SULLIVAN

I, SUSAN E. SULLIVAN, hereby declare:

1.      I am an attorney, duly licensed to practice law in the State of Illinois and the United States District Court for the Northern District of Illinois. I am admitted pro hac vice in the matter of *Williams v. City of Beverly Hills*.  I am counsel of record for Defendants CITY OF BEVERLY HILLS, a public entity, SANDRA SPAGNOLI, DOMINICK RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER BILLY BLAIR, OFFICER JERRY WHITTAKER, and OFFICER JESSE LYGA, as employees of the City of Beverly Hills, a public entity in this action.

2.      The parties participated in a pre-filing meet and confer under Local Rule 7-3 that began on May 22, 2023, and concluded on July 12, 2023, in an attempt to resolve disputes as to Plaintiffs' alleged claims in lieu of Defendants filing a Motion to Dismiss Plaintiffs' TAC.

3.      On May 22, 2023, Defendants' counsel met and conferred with Plaintiffs' counsel on a court-reported videoconference for one hour and twenty minutes to discuss Plaintiffs' proposed TAC and discovery matters.

4.      At the meet and confer on May 22, 2023, Defendants raised the following issues regarding their following positions on Plaintiffs' proposed TAC, including that Defendants objected to the filing of the proposed TAC for reasons including the following:

a. That Blake Nance and March Coopwood could not be named as Defendants pursuant to the statute of limitations. Plaintiffs' position was that they disagreed.

b. That Shepherd York and Cameron Rogers could not be names as Plaintiffs pursuant to the statute of limitations. Plaintiffs' position was that they disagreed.

c. Correcting the allegations regarding the number of alleged class members in the proposed RDT and EDD arrestee subclasses. Plaintiffs' position was that they

would review for errors.

d. Correcting Plaintiffs' shotgun pleading to allege with specificity what claims each Plaintiff was alleging as to each Individual Defendant in claims one and two. Plaintiffs' position was that they would review for potential corrections.

e. Correcting and/or dismissing claims improperly alleged against Defendants in their official and individual capacities. Plaintiffs' position was that they disagreed.

f. Dismissing insufficient claims pursuant to supervisory liability. Plaintiffs' position was that they disagreed.

g. Dismissing Plaintiffs' Due Process violations claims. Plaintiffs' position was that they disagreed.

h. Dismissing Plaintiffs' allegations regarding the proposed third subclass of June 26, 2020 protesters. Plaintiffs' position was that they would remove any reference to the third proposed subclass as they did not intend to pursue it any longer.

i. Correcting the percentage calculations of alleged class members. Plaintiffs' position was that they would review for potential corrections.

j. Removing reference to an EDD task force or any task force as inaccurate. Plaintiffs' position was that they would review for potential corrections.

k. Correcting inaccurate summaries of deposition testimony and factual errors. Plaintiffs' position was that they would review for potential corrections.

5.   The parties were at an impasse at the end of their meet and confer on May 22, 2023, on the disputed issues raised by Defendants and Defendants' objection to Plaintiffs filing the proposed TAC, with Plaintiffs' counsel stating that they would still seek leave to file their proposed TAC, but consider the issues raised by Defendants and make corrections as indicated.

6.   On July 11, 2023, after Plaintiffs filed their TAC, and in compliance with this Court's orders, Defendants served Plaintiffs with correspondence setting forth each disputed issue of deficiencies in Plaintiffs' filed TAC in preparation for

the parties' scheduled follow-up meet and confer. (*See* Defense Counsel's Correspondence, dated July 11, 2023, attached hereto as Exhibit 1).

7.      On July 12, 2023, Defendants' counsel again met and conferred with Plaintiffs' counsel at a videoconference for twenty-five minutes regarding each disputed issue in Plaintiffs' TAC, as set forth in Defendants' July 11 meet and confer correspondence.

8.      At the meet and confer on July 12, 2023, Defendants raised their following positions:

a. Striking Plaintiffs TAC a pleading for which they did not receive leave to file and dismissing Plaintiff Khalil White as a party, including because his limitations period expired. Plaintiffs' position was that they would stand on the filed pleading and would not dismiss Plaintiff Khalil White and that Defendants should move to strike the pleading and dismiss Plaintiff Khalil White.

b. Striking Plaintiffs' class allegations, including the proposed class and proposed sub-classes for being overbroad, including uninjured members and Article III standing issues, and the "fail safe" problem, as well as for including impertinent and immaterial allegations. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to strike the allegations.

c. Dismissing Plaintiffs' TAC on the basis that it is a "shotgun pleading" that fails to specifically allege what role each Defendant played in the alleged harm. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

d. Dismissing Plaintiffs Shepherd York and Cameron Rogers pursuant to the state of limitations. Plaintiffs' position was that they would stand on the filed pleading and would not dismiss Plaintiffs York and Rogers and that Defendants should move to dismiss Plaintiffs York and Rogers.

e. Dismissing Plaintiffs' first claim for violation of procedural and substantive due process rights for failure to state a claim. Plaintiffs' position was that they would

stand on the filed pleading and that Defendants should move to dismiss the pleading.

f. Dismissing Plaintiffs' second claim for violation of unreasonable search and seizure for failure to state a claim. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

g. Dismissing Plaintiffs' third claim for municipality liability (*Monell* Claim) for failure to state a claim. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

h. Dismissal of Plaintiffs' fourth claim for equal protection for failure to state a claim. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

i. Dismissal of Plaintiffs' request for injunctive relief as improper. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

j. Dismissal of any excessive force claims as inadequately plead. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

k. Dismissal of any state law claims pursuant to the statute of limitations. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

l. Dismissal of improper claims made against Defendant Officers in their official and individual capacities. Plaintiffs' position was that they would stand on the filed pleading and that Defendants should move to dismiss the pleading.

9.      Defendants again confirmed that the parties were at impasse at the end of their meet and confer on July 12, 2022, on each disputed issue regarding Plaintiffs' TAC, requiring Defendants to file a Motion to Dismiss.

I declare under penalty of perjury, under the laws of the United States of America that the foregoing facts are true and correct, and that if called upon to do so

1    I could and would competently testify thereto.

2

3         Executed this 18th day of July 2023 at City of Chicago, Illinois.

4

5                                              s/ *Susan E. Sullivan*

6                                              SUSAN E. SULLIVAN,
                                               Declarant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

## STATE OF ILLINOIS, COUNTY OF COOK

I am over the age of 18 and not a party to the within action; I am employed by SWANSON, MARTIN & BELL, LLP in the County of Cook at 330 North Wabash Avenue, Suite 3300, Chicago, IL 600611.

On July 19, 2023, I served the foregoing document(s) described as: **DEFENDANTS CITY OF BEVERLY HILLS, SANDRA SPAGNOLI, DOMINICK RIVETTI, CAPTAIN SCOTT DOWLING, SERGEANT DALE DRUMMOND, OFFICER JON ILUSORIO, OFFICER JONATHAN DE LA CRUZ, SGT. BILLY FAIR, OFFICER JAMES KRUG, OFFICER BILLY BLAIR, OFFICER JERRY WHITTAKER, AND OFFICER JESSE LYGA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT, DECLARATION OF SUSAN E. SULLIVAN, and EXHIBIT 1**

☐    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☐    **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of SWANSON, MARTIN & BELL, LLP, and addressed as shown on the attached service list, for deposit in the United States Postal Service.  I am readily familiar with the practice of SWANSON, MARTIN & BELL, LLP for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒    **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐    **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of SWANSON, MARTIN & BELL, LLP, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by GSO/GLS and/or FedEx to receive said documents, with delivery fees provided for.  I am readily familiar with the practices of SWANSON, MARTIN & BELL, LLP for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by GSO/GLS and/or FedEx on said date in the ordinary course of business.

☒    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on July 19, 2023 at Chicago, Illinois.

*s/ Susan E. Sullivan*

Susan E. Sullivan

- 31 -

1

2

**JASMINE WILLIAMS, et al v. CITY OF BEVERLY HILLS, et al.**
**USDC, CENTRAL DISTRICT OF CALIFORNIA**
**CASE NO.:  2:21-cv-08698-FMO-RAO**

3

4

**LASC, CENTRAL DISTRICT**
**CASE NO.: 21STCV31949**

**ASSIGNED FOR ALL PURPOSES TO**
**HONORABLE FERNANDO M. OLGUIN**
**COURTROOM 6D**

5

6

**SERVICE LIST**

7

8

9   Bradley C. Gage, Esq.                        Attorneys for Plaintiffs
10  Milad Sadr. Esq.                             **JASMINE WILLIAMS, JUWAN**
    LAW OFFICES OF GOLDBERG & GAGE              **WHITE, JOSEPH NETT,**
11  A Partnership of Professional Corporations  **LAKISHA SWIFT, CAMERON**
    23002 Victory Boulevard                     **ROGERS, SHEPHERD YORK,**
12  Woodland Hills, California 91367            **and the PUTATIVE CLASS**
    Telephone: (818) 340-9252
13  Facsimile: (818) 340-9088
14  Email:  bgage@goldbergandgage.com
              msadr@goldbergandgage.com

15  Benjamin L. Crump, Esq. (*Pro Hac Vice*)     Attorneys for Plaintiffs
16  Elizabeth P. White, Esq. (*Pro Hac Vice*)    **JASMINE WILLIAMS, JUWAN**
    Natalie A. Jackson, Esq. (*Pro Hac Vice*)    **WHITE, JOSEPH NETT,**
17  BEN CRUMP LAW PLLC                          **LAKISHA SWIFT, CAMERON**
    122 South Calhoun Street                     **ROGERS, SHEPHERD YORK,**
18  Tallahassee, FL 32301                        **and the PUTATIVE CLASS**
    Telephone: (850) 224-2021
19  Facsimile: (800) 770-3444
20  Email:  ben@bencrump.com
              elizabethpaige@bencrump.com
21            natatlie@bencrump.com

22

23  Jeffrey Spencer, Esq.                        Attorneys for Plaintiffs
    THE SPENCER LAW FIRM                        **JASMINE WILLIAMS, JUWAN**
24  2 Venture, Suite 220                         **WHITE, JOSEPH NETT,**
    Irvine, CA  92618                            **LAKISHA SWIFT, CAMERON**
25  Telephone: (949) 240-8595                    **ROGERS, SHEPHERD YORK.**
    Facsimile: (949) 377-3272                    **and the PUTATIVE CLASS**
26  Email:  jps@spencerlaw.net

27

28